174 U.S. 153 (1899)
MORAN
v.
DILLINGHAM.
No. 248.
Supreme Court of United States.
Submitted April 17, 1899.
Decided May 1, 1899.
CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.
Mr. L.W. Campbell for Moran.
Mr. George Clark and Mr. D.C. Bolinger for Dillingham.
MR. JUSTICE GRAY delivered the opinion of the court.
This is a writ of certiorari heretofore granted by this court, under the act of March 3, 1891, c. 517, § 6, to review a decree made by Judge Pardee and Judge Newman in the Circuit Court of Appeals for the Fifth Circuit upon an appeal to that court from the Circuit Court of the United States for the Northern District of Texas.
The leading question presented by the writ of certiorari is whether Judge Pardee was disqualified to sit at the hearing of that appeal by the provision of § 3 of that act, "that no justice or judge before whom a cause or question may have been tried or heard in a District Court or existing Circuit Court, shall sit on the trial or hearing of such cause or question in the Circuit Court of Appeals." 26 Stat. 827.
If Judge Pardee was so disqualified, the decree in which he took part, even if not absolutely void, must certainly be set aside and quashed, without regard to its merits. American *154 Construction Co. v. Jacksonville Railway, 148 U.S. 372, 387.
The material facts bearing upon the question of his disqualification, as appearing by the record now before this court, are as follows:
Upon a bill in equity, filed April 2, 1885, in the aforesaid Circuit Court of the United States, by the Morgan's Louisiana and Texas Railroad and Steamship Company against the Texas Central Railway Company, to foreclose a mortgage of its railroad and other property, Judge Pardee, on April 4, 1885, made an order, appointing Benjamin G. Clark and Charles Dillingham joint receivers of the property, and appointing John G. Winter special master as to all matters referred or to be referred to him in the cause.
Upon a petition filed in that cause by Dillingham, representing that he had been the active receiver for seventeen months, and praying for an allowance for his services as such, Judge Pardee, on December 4, 1886, made an order "that the receivers be authorized and directed to place Charles Dillingham upon the pay roll of the receivers for the sum of one hundred and fifty dollars per month, as an allowance upon his compensation as receiver in this cause; this allowance to date from the possession of the receivers, and to continue while Mr. Dillingham gives his personal attention to the business of the company or until the further order of the court."
On April 12, 1887, Judge Pardee made a final decree in the cause, for the foreclosure of the mortgage; for the sale of the mortgaged property by auction; and for the payment by the purchasers of "all the indebtedness of the receivers incurred by them in this cause, including all the expenses and costs of the receivers' administration of the property," "and also the compensation of the receivers and their solicitors;" appointing Dillingham and Winter special master commissioners to make the sale, and to execute and deliver a deed to the purchasers; and reserving the right to any party to the cause, as well as to the receivers and master commissioners, to apply to the court for orders necessary to carry that decree into execution. Appeals from that decree were taken by the Morgan's *155 Louisiana and Texas Railway and Steamship Company and by the Texas Central Railway Company to this court, which on November 24, 1890, affirmed that decree. 137 U.S. 171.
Pursuant to that decree, on April 22, 1891, all the property mortgaged, except some not immediately connected with the railroad, was sold to Moran, Gold and McHarg, trustees for bondholders. On their petition filed in the cause, Judge Pardee, on August 28, 1891, made a decree directing Dillingham and Clark, receivers, to execute and deliver a deed, and to deliver possession, to the purchasers, of all the property, real and personal, of the Texas Central Railway Company, in the State of Texas, used for and pertaining to the operation of its railway; and providing "that nothing in this decree contained is intended to affect, or shall be construed as affecting, the status of any pending or undetermined litigation in which said receivers appear as parties; such litigation shall continue to determination in the name of said receivers, with the right reserved to said purchasers, should they be so advised, to appear and join in any such litigation; and nothing in this decree contained is intended to affect, or shall be construed as affecting, the receivership of any of the property of the defendant railway company other than the property so transferred to said purchasers, possession of which said property other than that so transferred is retained for further administration, subject to the orders of this court;" and "that said purchasers or said receivers may apply at the foot of this decree for such other and further relief as may be just." The property was accordingly delivered to the purchasers in September, 1891. On November 6, 1891, on like petition of the purchasers, Judge Pardee made a similar decree, except in directing the deed to the purchasers to be executed and delivered by Dillingham and Winter, special master commissioners, and in other particulars not material to be mentioned.
Dillingham afterwards, and until April, 1895, continued to draw and pay to himself the sum of $150 a month, and returned quarterly accounts to the master crediting himself with those sums. On August 25, 1891, he presented a petition, entitled in the cause, to the master, praying him to *156 "make to him such an allowance for his services as receiver in the above entitled cause, from the date of his appointment until his discharge, as to said master may seem just and proper." About the same time, a compromise was made between him and the purchasers, pursuant to which he was paid, in addition to the allowance of $150 a month for the past, the sum of $20,000 for services as receiver; and he signed a paper, entitled in the cause, acknowledging that he had received from them the sum of $20,000 "in full of my fees and charges as receiver of the Texas Central Railway Company, as per agreement." At the hearings before the master upon Dillingham's accounts, it was contested between him and the purchasers whether he was entitled to $150 monthly since the compromise. The master reported that he was; and exceptions by the purchasers to his report were referred on April 8, 1895, by order of Judge McCormick, to Abner S. Lathrop, as special master, who by his report, filed September 26, 1896, found that Dillingham was entitled to the monthly allowance of $150 until April, 1893, but was not entitled to it from April, 1893, to April, 1895. That report, on exceptions taken by the purchasers and by Dillingham, was confirmed by decree of Judge Swayne on December 5, 1896; and from that decree Dillingham took an appeal to the Circuit Court of Appeals.
All the proceedings above stated were filed in and entitled of the cause of Morgan's Louisiana and Texas Railroad and Steamship Company v. Texas Central Railway Company.
The appeal of Dillingham was heard in the Circuit Court of Appeals by Judge Pardee and Judge Newman, who, for reasons stated in their opinion, delivered by Judge Newman, sustained Dillingham's exceptions to the master's report, reversed the decree of Judge Swayne, and remanded the cause to the Circuit Court "with instructions to overrule and discharge the motions attacking the receiver's accounts." 52 U.S. App. 425, 432. Moran, Gold and McHarg, the purchasing trustees, thereupon applied for and obtained this writ of certiorari. 169 U.S. 737.
The intention of Congress, in enacting that no judge before *157 whom "a cause or question may have been tried or heard," in a District or Circuit Court, "shall sit on the trial or hearing of such cause or question," in the Circuit Court of Appeals, manifestly was to require that court to be constituted of judges uncommitted and uninfluenced by having expressed or formed an opinion in the court of the first instance. Whatever may be thought of the policy of this enactment, it is not for the judiciary to disregard or to fritter away the positive prohibition of the legislature.
The enactment, alike by its language and by its purpose, is not restricted to the case of a judge's sitting on a direct appeal from his own decree upon a whole cause, or upon a single question. A judge who has sat at the hearing below of a whole cause at any stage thereof is undoubtedly disqualified to sit in the Circuit Court of Appeals at the hearing of the whole cause at the same or at any later stage. And, as "a cause," in its usual and natural meaning, includes all questions that have arisen or may arise in it, there is strong reason for holding that a judge who has once heard the cause, either upon the law or upon the facts, in the court of first instance, is thenceforth disqualified to take part, in the Circuit Court of Appeals, at the hearing and decision of the cause or of any question arising therein. But, however that may be, a judge who has once heard the cause upon its merits in the court of first instance is certainly disqualified from sitting in the Circuit Court of Appeals on the hearing and decision of any question, in the same cause, which involves in any degree matter upon which he had occasion to pass in the lower court.
In the present case, all the decrees and orders of Judge Pardee in the Circuit Court, as well as the decree of Judge Swayne from which the appeal in question was taken, were made in and entitled of the original cause of the bill in equity to foreclose the mortgage of the Texas Central Railway Company. The order appointing Dillingham and Clark receivers upon the filing of the bill, the order allowing Dillingham for his services as receiver the sum of $150 a month from his taking possession and "while he gives his personal attention to the business of the company or until the further order of the *158 court," the final decree of foreclosure and sale, and the decrees for delivery of possession to the purchasers, were all made by Judge Pardee; and the appeal, in the hearing and decision of which he took part, from the decree of another judge concerning the compensation of Dillingham as receiver, involved a consideration of the scope and effect of his own order allowing that receiver a certain sum monthly.
The necessary conclusion is that Judge Pardee was incompetent to sit on the appeal in question, and the decree in which he participated was not made by a court constituted as required by law; and therefore this court, without considering whether that decree was or was not erroneous in other respects, orders the
Decree of the Circuit Court of Appeals to be set aside and quashed, and the case remanded to that court to be there heard and determined according to law by a bench of competent judges.