# IN THE MATTER OF GEORGE A. DAVIS, An Attorney at Law.

## PETITIONS FOR REOPENING AND HEARING.

SUBMITTED NOVEMBER 4, 1903.    DECIDED JANUARY 19, 1904.

FREAR, C.J., GALBRAITH AND PERRY, JJ.

The rendering of a previous judgment held not to disqualify a judge, because such judgment was rendered in another case and upon a question not involved in the case in which the objection of disqualification is presented.

That a judge on three different occasions some years ago punished an attorney for contempt of court does not of itself show bias or prejudice on the part of such judge against the attorney.

Upon the facts stated in the opinion a judge of the court held not to be disqualified by reason of interest as alleged.

A rehearing will not be granted on the ground that the Chief Justice of this Court, not called at the trial, is a necessary and material witness, no intimation having been given at or before the trial that the proposed witness could give any testimony or as to what testimony, if any, he could give, if called, and no desire having been

expressed that he testify and no intimation being even now given as to what he could testify to; or, in a disbarment case, on the ground that the party supposed to be aggrieved by the misconduct of the attorney was not called by the Attorney General as a witness; or on the ground that a necessary and material witness was absent from the jurisdiction at the time of the trial, where no showing is made as to what his testimony would be, if called, and where, in submitting the case to the Court for decision, the party now asking for the rehearing expressly said that he would not call the witness but would close without his testimony.

In a disbarment case no complaint by the party supposed to be aggrieved is necessary. An information may in such case be filed by the Attorney General.

Ratification, if any, by a client or other party most interested, of misconduct of an attorney, does not bind the Court or affect its duty in a proceeding for disbarment.

In a disbarment case, it is not a defense that at the time of the alleged misconduct the attorney was a District Magistrate.

This Court may in a proper case disbar an attorney whose license was originally granted by the Supreme Court of the Republic of Hawaii, and who since the Organic Act took effect has not received a new license from this Court or taken the oath prescribed by Section 19 of the Organic Act.

### OPINION OF THE COURT BY PERRY, J.

#### (Galbraith, J., dissenting.)

These are petitions for a reopening and rehearing of the case. Nine grounds are alleged in the petition and supplemental petition, in substance as follows: (1) that respondent did not have time to properly prepare for his defense; (2) that necessary and material witnesses were absent from Honolulu at the time of the hearing; (3) that this court had no jurisdiction because there was no complaint by any of the parties interested; (4) that the statute was not complied with and that the filing of an information by the Attorney General was irregular; (5) that the acts and conduct complained of were ratified and confirmed by the parties interested; (6) that the Chief Justice was disqualified, by reason of interest and relationship within the meaning of the Organic Act, to take part in the hearing and

determination of the case and that therefore the order of disbarment is void; (7) that the findings made are not supported by the evidence; (8) that this court had no power to revoke the respondent's license to practice in the District Court of Honolulu because at the time the order was made the respondent was a magistrate of that court; (9) that the respondent was not at any time licensed to practice as an attorney, counselor or solicitor of this court or of any other court of this Territory and that therefore this court had no jurisdiction to make the order now sought to be reviewed.

In affidavits and briefs filed in support of the petitions five additional grounds, not mentioned in the petitions themselves, are referred to: (10) that prior to the filing of the information, the Attorney General had presented to this Court a report wherein he stated, in effect, that in his opinion there was no cause for preferring charges of misconduct against the respondent; (11) that the trial was not fair, because the writer of this opinion was at the time biased and prejudiced against the respondent and was for that reason and also for the reason that he had rendered a previous judgment concerning the sanity of Sumner disqualified; (12) that certain evidence tending to show what became of the sum of $46025 after it was deposited in bank was erroneously excluded; (13) that Maria S. Davis did not testify; and (14) that a certain agreement executed September 30, 1902, and relating to fees and to the power of settlement and discontinuance, had been mislaid at the time of the trial and has since been found. These five grounds while strictly not properly before us will nevertheless be considered.

First in natural order are the suggestions of disqualification of members of this Court. That the writer had prior to these proceedings as Circuit Judge passed upon the question of J. K. Sumner's sanity did not disqualify him as matter of law for that previous judgment was not rendered in this case; nor is this an appeal or new trial in that case. The provision of the Organic Act is, Section 84, that "no judge shall sit on an appeal, or new trial, in any case, in which he may have given a previous judgment." The question of whether or not Sumner

was insane within the meaning of our statute on guardianship, was not even in issue in this case, nor was it passed upon. On the subject of bias and prejudice, the only fact stated in support of the contention is that on three different occasions some years ago the writer as Circuit Judge punished the respondent for contempt. It is not even alleged that the punishment was undeserved. The writer has no hesitation in saying that in fact no bias or prejudice exists or existed at the time of the trial and the Court finds that no cause has been shown for believing that any exists or existed.

The provision (Section 84) of the Organic Act with reference to which the suggestion that the Chief Justice is disqualified is made, is that "no person shall sit as a judge * * * * in any case in which his relative by affinity or by consanguinity within the third degree is interested, either as plaintiff or defendant, or in the issue of which the said judge * * * * may have, either directly or through such relative, any pecuniary interest." The facts relied upon are that the Chief Justice is a stockholder in the Oahu Railway & Land Co. and a trustee for its bondholders and that he is related within the degree named to Mr. B. F. Dillingham, an officer of and a stockholder in that corporation. It appeared in evidence during the hearing, in connection with one of the charges against the respondent, that the latter obtained $5000 from the Railroad Company in the course of the settlement of the litigation then pending. Neither the Chief Justice nor Mr. Dillingham nor the Oahu Railway & Land Co. has any interest, within the meaning of that section, in this case or in its issue,—a proceeding the sole question in which was whether or not the respondent was guilty of professional misconduct. The most that can be said is that the Railway Company and its stockholders and bondholders are interested in upholding the validity of the deed from Sumner, but that is a matter which was not involved, either directly or indirectly, in the investigation of respondent's conduct and which cannot be affected by the result of these proceedings. The order made in this case would not even be admissible in evidence in any proceeding brought against the railway company to test the

validity of the deed.  As to actual bias or prejudice on the part of the Chief Justice as distinguished from legal or technical disqualifications, that, if there were any, would naturally be under the circumstances in favor of the respondent, but not only is there nothing to indicate any such bias or prejudice but the respondent himself does not contend that there was or is any. On the contrary the respondent in his brief says, "With the * * * * Chief Justice * * I have no complaint nor fault as to his fairness and impartiality".

The statement in respondent's brief that the Chief Justice is a necessary and material witness and that the respondent will call him on a rehearing, if granted, is scarcely worthy of notice. Even if sincere, the suggestion comes too late.  That the Chief Justice could possibly give any relevant testimony was not even intimated at or before the trial nor was any desire expressed that he testify; nor is it now intimated what the testimony, if any, is which he would be expected to give if called.

Ground number 1 cannot be sustained.  No such complaint was made at or before the trial, but on the contrary the respondent announced himself as ready to proceed.

2, 3 and 13.  Only two witnesses are named in this connection.  One of them, Maria S. Davis, was in Honolulu at the time of the trial.  Apparently she was ill at the time,—how ill does not appear.  No showing was made by the respondent why she was not present as a witness nor was any attempt made to obtain her testimony by means of a deposition or otherwise, nor was any continuance asked for.  Whether the respondent desired her as a witness or what she could have testified to if she had been present, does not appear.  So far as it is the failure of the Attorney General to call her as a witness that is relied upon, that, too, cannot avail the respondent.  We know of no statute or rule which makes indispensable the evidence of or a complaint by a client or other party supposed to be aggrieved. The Court may, as it did in this case, of its own motion cause an investigation to be had.  There is nothing in Section 1198, C.L., to the contrary.

B. F. Dillingham is the other witness named and the only one absent from Honolulu during the trial. It is not claimed that his testimony would bear upon any charge other than the first. No showing is made as to what his testimony would be if he were called, so that the court may judge of its materiality, relevancy or possible effect. Moreover, the respondent, after stating before the trial or in its early stages that he would like to have Mr. Dillingham as a witness, at the conclusion of the trial expressly said, in effect, that he would not call him but would close without his testimony and submitted the case. Under the circumstances the point cannot now be sustained.

4 and 10. The filing of an information by the Attorney General was not, in our opinion, irregular. No complaint by Mrs. Davis or Mr. Sumner or any other party supposed to be aggrieved was necessary. That the Attorney General had previously reported that he knew of no sufficient cause for presenting charges against the respondent, is immaterial. In instituting the proceedings he acted upon information obtained wholly as to one charge and in large part at least as to the other charges subsequent to the filing of the report. Moreover, he presented the information and conducted the investigation, not of his own motion, but, as we have already said, at the request of this Court.

5. Ratification, if there was any, by the clients or other parties most interested, of misconduct of an attorney, does not bind the court or affect its duty in a proceeding of this nature.

7. This involves a reconsideration of the whole case. The precise question before us is whether such reconsideration shall be had.

8. That the respondent was at the time the order of disbarment was made a District Magistrate for the District of Honolulu, does not constitute a defense to any of the charges made against him nor limit the authority or duty of this court in passing upon his conduct as an attorney.

9. The precise point made in support of this ground is that the respondent was licensed only by the Supreme Court of the Republic of Hawaii and that his license became of no force

when the Republic and its Supreme Court ceased to exist. Assuming, but not deciding, that a new written license might properly have been issued to respondent after the Organic Act took effect, nevertheless the fact remains that thereafter this Court continued to recognize him as a duly licensed practitioner and permitted his name to remain upon the roll of attorneys and counselors, and that the respondent continued to practice in this and other courts of the Territory by virtue of this recognition and permission and not otherwise. In his answer in this case the respondent expressly admits that he is a member of the bar of this court and that he is conducting his profession as a lawyer in Honolulu and his vigorous defense was conducted throughout on the theory that he was then a duly admitted practitioner. The Organic Act did not require those who held licenses as attorneys to take any new oath. Section 19 made this obligatory only upon "every member of the legislature and all officers of the government of the Territory." Under these circumstances, it was clearly within the jurisdiction of this court to have made an order disbarring the respondent and ordering his name stricken from the roll of attorneys and counselors.

12. The question of the admissibility of this evidence was carefully considered at the trial and no reason now appears for holding that there was error in the ruling.

14. The agreement referred to, which purports to have been made between Maria S. Davis of the first part, R. W. Davis of the second part, George A. Davis of the third part and Magoon & Peters of the fourth part, is to the effect, in part, that Maria S. Davis and R. W. Davis agree to give to the other parties, as compensation for their services, one third of all money and other property recovered or received by them "in the matter of the suit now pending in the Circuit Court of the First Judicial Circuit in the matter *The Oahu Railway & Land Co. v. John K. Sumner, et al.*, the case of *John K Sumner, by his next friend Maria S. Davis v. The Oahu Railway & Land Co.*, and in the matter of the petition for guardianship of John K. Sumner, and all proceedings that may be incidental thereto, or grow-

ing out of all or any of said matters," and also one third of all
property or benefits that might be received by them "from the
Estate of J. K. Sumner during his lifetime and after his death
by way of devise, inheritance or in any other manner," and
contains a covenant by Maria S. Davis and R. W. Davis not to
settle "said matter" nor to "submit to the withdrawal" of the
pending proceedings or of any proceedings that might be there-
after brought, except with the consent in writing of the parties
of the third and fourth parts. It is not contended, nor can it
be successfully, that the agreement, if introduced, would be of
any relevancy so far as the subjects of abuse of process and the
method by which the $2000 fee was obtained are concerned.
The argument is that this agreement if in evidence would show
that the fee of $5000 demanded and received by the respondent
was authorized by the contract and therefore not excessive,
second, that the testimony of the witnesses Magoon and R. W.
Davis concerning the attempts at settlement between Sumner,
Maria S. Davis and R. W. Davis and the Railway company was
untrue, and, third, that Messrs. Magoon & Peters also were
guilty with the respondent in the matter of the $5000 fee and
yet have not been punished. Taking the last subdivision of the
argument first, a sufficient answer thereto is that in this case
the question is not whether Mr. Magoon or Mr. Peters or both
are guilty but whether this respondent is guilty, and assuming
that Mr. Magoon and Mr. Peters were also guilty that would
be no defense on behalf of this respondent.

Assuming that the agreement authorized the respondent and
his associates in charging as their fee one third of the amount
of money recovered, it clearly did not authorize them to charge
or collect one half of that amount and that is what the respond-
ent did when he impeded and delayed the settlement originally
agreed upon by Maria S. Davis and Sumner. When the re-
spondent first named $5000 as the amount of his fee, the only
amount mentioned as the one to be paid by Sumner to Maria S.
Davis was $10000,—in short, at no time was $15000 named as
the amount to be received by Maria S. Davis. The $5000 addi-
tional was agreed to be paid by the railway company expressly

to satisfy the claim of the respondent for fees and not as part of the amount to be paid to Maria S. Davis in settlement or otherwise.

We fail to perceive how the agreement if introduced in evidence would tend to show the testimony of the two witnesses named to be false. That the agreement purported to limit Maria S. Davis' power to settle or discontinue and to give the attorneys a veto power in the matter, does not render their testimony less probable or credible. On the contrary, the existence of those provisions, while constituting no justification or defense for the acts and conduct of which the respondent has been found guilty, would seem to add probability and force to any evidence given to the effect that the respondent had attempted to impede and delay the settlement. It may be added that neither during the efforts at settlement of the Sumner litigation nor at the trial of this case did the respondent rely upon or even refer to this agreement. No mention was made at the trial of its existence and no claim that it was material in the investigation then being conducted.

The petitions are denied.

*G. A. Davis* in person.

*Attorney General L. Andrews contra.*

### DISSENTING OPINION OF GALBRAITH, J.

The reasons given against the judgment of disbarment in this case, *ante,* pp. 241, 242, 243, particularly that "that the findings of fact are not supported by credible testimony", in my opinion, should be sufficient reason for ordering a rehearing. In addition to these the respondent presents two grounds in his application that are entitled to thoughtful consideration, namely, (1) That two members of the court were disqualified to sit in the case, (2) The contract of employment in the first instance offered as additional evidence and as throwing new light on the case.

If the first ground is well taken the judgment should be set aside without regard to the merits on the ground and for the reason that it "was not made by a court constituted as required

by law". *Moran v. Dillingham,* 174 U. S. 153, 158; *Am. Const. Co. v. Jacksonville Railway,* 148 U. S. 372.

In concurring in the judgment of the House of Lords reversing a decree of the Lord Chancellor on the ground that he was a shareholder in a company interested in the decree, Lord Campbell said, "It is of the last importance that the maxim that 'no man is to be a judge in his own cause' should be held sacred. And that is not to be confined to a cause in which he is a party, but applies to a cause in which he has an interest." "We have again and again set aside proceedings in inferior tribunals, because an individual who had an interest in a cause took a part in the decision. And it will have a most salutary effect on these tribunals, when it is known that this high court of last resort, in a case in which the Lord Chancellor of England had an interest, considered that his decree was on that account a decree not according to law, and was set aside. This will be a lesson to all inferior tribunals to take care, not only that in their decrees they are not influenced by their personal interest, but to avoid the appearance of laboring under such an influence." *Dimes v. Grand Junction Canal,* 3 H.L., Cases 759, 792; *Cooley's Constitutional Limitations* (6th ed.) p. 507.

I am assuming in the discussion of this question that neither of my associates were, as a matter of fact, disqualified to sit in the case, still, if, as a matter of law, either was disqualified the judgment of disbarment is voidable, if not absolutely void, and should be set aside.

It has been long recognized as good ground for recusation against a judge that he had a pecuniary interest in the issue to be tried either through himself or a near relative. This principle was recognized by Congress in framing the Organic Act for this Territory and is embraced in Section 84, as follows: "That no person shall sit as a judge or juror in any case in which his relative by affinity or by consanguinity within the third degree is interested, either as a plaintiff or defendant, or in the issues of which the said judge or juror may have directly or through such relation any pecuniary interest." The respondent is possibly the only person who has any pecuniary interest

in this suit. Certainly there is little if any ground for the claim that either of the judges had any such interest in the issue and are disqualified under the provisions of this section.

This, however, does not dispose of the question. It will be observed that section 84 places "a judge" and "juror" on the same plane in so far as the disqualification of that section is concerned and prescribes that each shall be disqualified when interested in the issue to be tried. It will not be claimed that this section is exclusive, or that there are no other disqualifications than that of interest when applied to jurors. Then can it be claimed with any more reason that there are not other grounds of recusing a judge than pecuniary interest in the suit?

This proceeding was not an appeal but was an original cause in this court. By it the original and not the appellate jurisdiction of the court was invoked. In disposing of it the court not only declared the law of the case but also found the facts to which the law was applied—thus exercising the functions of both court and jury. In this particular, at least, this case is different from the cases usually coming before this court. There was and possibly could not be any material division among the judges as to the law of the case but when it came to the findings of fact, or the things proved by the testimony, there was a material divergence of opinion and thus the exercise of the functions of the jury, in trial courts, was the most important part of the duties of the court in this case.

In the trial of this kind of a cause is it unreasonable to hold that anything that would disqualify a juror in the case if it were tried to a jury in a *nisi prius* court would disqualify a judge from sitting in the case? If the respondent were sued in an action of debt for more than twenty dollars his right to a trial by an impartial jury of his countrymen is guaranteed by the Seventh Amendment to the Constitution of the United States. By the judgment in this case the respondent is not only deprived of something of much greater value than twenty dollars, namely, the right to make a living for himself and family by the pursuit of his occupation but also something which, in the words of Holy Writ, "is rather to be chosen than great riches." Can it be

supposed for a moment that he has not the absolute right to have the facts in a case of such great importance to him passed upon by judges whose minds are free from bias or prejudice? Has he not the right to recuse a judge in the trial of such a cause for the same cause he might challenge a juror if the case were on trial before a jury? I submit that he has.

One of the charges found established against the respondent was blackmailing the Oahu Railway & Land Company out of five thousand dollars. Mr. Dillingham, who acted for the company in the transaction, is the father-in-law of the Chief Justice and the Chief Justice is also a stockholder and the trustee for the bondholders of the Oahu Railway & Land Company. Could the Chief Justice approach the consideration of this case with the same impartial and unbiased mind that he would had the respondent been charged with blackmailing some other person or corporation with whom he was not so closely connected?

Mr. Justice Perry has heretofore punished the respondent at three several times for contempt of court—one sentence being for a term of ten days in jail. Could Judge Perry at the hearing of these charges give to the defendant the full force and effect of the presumption of innocence that the law requires until his guilt was established by competent evidence? Certainly jurors similarly situated when drawn in a trial would be subject to a challenge for cause. The denying of such a challenge under such circumstances would be safe grounds for a new trial.

"Justice requires that the judge should have no bias for or against any individual, and that his mind should be perfectly free to act as the law requires." *Bouvier, "Bias"*.

An early case wherein a non-freeman was convicted for violating a by-law or ordinance of the City of Chester forbidding any but freemen to keep shop or expose any goods for sale in said city is instructive in this connection. At the trial the defendant challenged the array of the panel because it had been arrayed by the sheriffs who were citizens and freemen of the city. This was overruled and in like manner a challenge to the "polls" because the jurors were citizens and freemen of the

city. The defendant was convicted and on appeal this judgment was reversed and a writ of error was sued out. Lord Mansfield in affirming the judgment of reversal and holding that the challenge to the polls was good on the ground of interest said, in part, "The exclusion of foreigners is a *monopoly to the freemen themselves.* The enforcing of this exclusion, by by-laws and penalties, is securing that monopoly. And in this action, the very freemen who were to gain by securing this monopoly, were the jury to determine it. Therefore *every* freeman had an interest and bias in the matter of the issue to be tried in this cause. It is no answer to the objection to say, 'that they were to have no part of the penalty'; for still they had a bias upon them in relation to the question to be tried. Whatever the action may be, if jurors be interested in *any* of the matters in issue, he is unfit to try them. The incapacity arises from his bias in the particular facts he is to try; and whatever be the facts which that bias touches, he is incapable of trying those facts": *Hesketh v. Broddock,* 3 Burrows, pp. 1847, 1857. And again on the question of interest the same distinguished authority says: "The law has so watchful an eye to the pure and unbiased administration of justice, that it will never trust the passions of mankind in the decision of any matter of right. If, therefore, the *sheriff, a juror,* or *a witness be in any sort interested* in the matter to be tried, the law considers him as under an influence which may warp his integrity, or pervert his judgment; and therefore will not trust him. The *minuteness* of the interest won't relax the objection. For the *degrees* of influence can't be measured; no line can be drawn, but that of a total exclusion of all degrees whatsoever." *Id.,* p. 1846.

"Interest, in the issue to be tried, is a good and sufficient ground of challenge to a juror; so interest, in the question to be determined by a judge in this court, is a good and sufficient disqualification. No man can sit in judgment in his own case. Natural reason and natural justice forbid it, and so does the common law. No matter how slight the interest which a juror may have in the issue; if he has any, the common law will not permit him to try the cause—so with a judge." *Trustees Int. Imp. Fund v. Bailey,* 10 Fla. 213, 230.

"The law carefully guards not only against actual abuse, but even against the appearance of evil, from which doubt can justly be cast upon the impartiality of judges, or respect for their decisions may be impaired." *In re Didge and Stevenson Mf'g. Co.,* 77 N. Y. 101, 110.

If it were possible that each of my associates could and did approach the consideration of this case free from bias, still the law which considers the weakness and frailty of human nature regards such a thing under such circumstances as impossible. If the right to urge this ground of recusation was waived by failure to raise it before or pending the hearing still it has been raised on this application and in order to avoid the appearance of having failed to render full justice to the respondent it should have great weight in inclining the court towards granting a rehearing.

The second ground was the additional evidence offered by the contract for fees. It is claimed that this contract was lost and was not found until after the decision in the case and through inadvertence and inability it was not produced at the hearing. The contract is alleged to have been prepared by one of the counsel associated with the respondent. This contract is as follows:

"THIS Agreement made between Maria S. Davis, of the First part, R. W. Davis, of the second part, George A. Davis, of the third part, and Magoon & Peters, of the fourth part,

WITNESSETH: "That said parties of the first and second parts hereby agree to give to said parties of the third and fourth parts one-third of all sums of money, evidences of indebtedness, choses in action and property recovered by them and each of them or to which they and each of them may be entitled or which they and each of them may receive in the matter of the suit now pending in the Circuit Court of the First Judicial Circuit in the matter

R.W.D.
G.A.D.
M.S.D. of
J.A.M.

The Oahu Railway & Land Co. v. John K. Sumner, et al., the case of John K. Sumner by his next friend Maria S. Davis v. The Oahu Railway & Land Co., and in the matter of the petition for guardianship of John K. Sumner, and all proceedings that may be incidental thereto, or growing out of all or any of said matters.

and they also agree to give a like one-third of whatever property

or benefits they and each of them may receive from the Estate of John K. Sumner during his lifetime or after his death by way of devise, inheritance, or in any other manner, upon all of which said parties of the third and fourth parts shall have a lien and first charge upon all sums of money, claims and property received by said parties of the first and second parts and each of them as hereinabove set forth.

Clerk
J.A.T.

"And they further agree to pay all costs of court in said suit or matter or in any other suit or proceedings which may be brought in the premises.

"And said parties of the third and fourth parts hereby agree to give their professional services in said matter or matters until final adjudication in the Supreme Court of the Territory of Hawaii and receive as full compensation therefor said one-third to be paid to them as aforesaid for all services which may be rendered in the matter; said one-third to be divided between them as follows: Said party of the third part an equal one-half of said one-third, and said parties of the fourth part an equal one-half of said one-third.

"And said parties of the first and second parts hereby covenant and agree that they will not settle said matter with said John K. Sumner or with any other persons excepting with the full and free consent of said parties of the third and fourth parts thereto obtained in writing, nor will they submit to the withdrawal of said proceedings that are now before the Court or any other proceedings that may be brought in the discretion of said parties of the third and fourth parts without such consent in writing of the parties of the third and fourh parts.

"In Witness Whereof said parties do hereunto set their hands and seals this 30th day of December, 1902.

"MARIA S. DAVIS,
"R. W. DAVIS,
"GEO. A. DAVIS,
"MAGOON & PETERS."

This contract, possibly, would not have established respondent's innocence of the charges against him if it had been produced and given in evidence at the hearing. But it does tend to disprove one of the charges found against him, namely, that he did "impede, hinder and delay a settlement of a suit that his client was willing to make" without right so to do. It further tends to prove that the other attorneys who signed this contract

with respondent were guilty of gross abuse of the process of the courts in making a contract for fees for one-third of the amount that might be recovered in an injunction suit and one to declare a man *non compos,* when the legitimate object of neither suit was to recover money, nor could either suit have resulted in a money judgment if prosecuted in good faith to final judgment.

This contract certainly tends to demonstrate one further fact, namely, that the court has not done full and complete justice in this case although the respondent may be guilty as found and also that full and complete justice will not be done in this case by disbarring the respondent and permitting the two attorneys associated with him in the enterprise to go unscathed.    The Court ought to re-examine the charges in the light of this new evidence in order to make sure that no innocent man is punished and that no guilty one escapes.