# IN THE MATTER OF PABLO MANLAPIT, A PRACTITIONER OF THE DISTRICT COURTS OF THE TERRITORY OF HAWAII.

## No. 1264.

### APPEAL FROM CIRCUIT JUDGE FIRST CIRCUIT. HON. J. T. DeBOLT, JUDGE.

ARGUED JUNE 14, 1920.                    DECIDED JULY 3, 1920.

### COKE, C. J., KEMP AND EDINGS, JJ.

ATTORNEY AND CLIENT—*suspension and disbarment—parties.*

> A proceeding under Act 19 S. L. 1919 to disbar a district court practitioner may be instituted by the attorney general and his complaint may be verified upon information and belief.

SAME—*same—relation of attorney and party aggrieved.*

> The relation of attorney and client need not exist between the attorney and the party aggrieved in order to make the misconduct of the attorney ground for disbarment.

SAME—*same—nature of act charged.*

The act with which the attorney is charged as ground for disbarment must be of such a nature as to reflect upon his professional character but need not constitute a criminal offense.

SAME—*same—same.*

Any act which imports fraud or dishonesty on the part of an attorney or any other gross misconduct which would reflect upon his professional character constitutes sufficient grounds for disbarment.

SAME—*same—sufficiency of complaint.*

The complaint in this case does not allege facts sufficient to charge the respondent with fraud or deceit or other gross misconduct · meriting disbarment.

OPINION OF THE COURT BY KEMP, J.
(Coke, C. J., dissenting.)

On March 2, 1920, the petition of J. Lightfoot, acting attorney general of the Territory of Hawaii, was filed in the circuit court of the first judicial circuit praying that a rule be entered against Pablo Manlapit to show cause why his name should not be stricken from the roll of attorneys of the district courts of said Territory because of his unfitness to be trusted with the power of an attorney. The gravamen of the complaint is that on or about the 19th of January, 1920, the said Pablo Manlapit, being then the president of the Filipino labor federation, caused to be issued over his name as president of the said Filipino labor federation an order requiring all the members of the said Filipino labor federation to strike and cease working upon the sugar plantations situate on the Island of Oahu for the alleged end and purpose of forcing the owners of said sugar plantations to increase the rate of wages paid to laborers on said plantations and that pursuant to said order a large number of Filipinos usually employed in the sugar industry on the Island of Oahu were on strike; that on or about the said 19th day of January the firm of Thompson, Cathcart & Lewis,

local attorneys, was specially retained to represent the
Hawaiian Sugar Planters' Association, a voluntary asso-
ciation exercising a general advisory control over the
sugar plantations within the Territory of Hawaii in
regard to the general policy of conducting the sugar
business in the Territory of Hawaii; that it was agreed
between the said firm of Thompson, Cathcart & Lewis
and Mr. R. D. Mead, secretary of, and acting for, the
Hawaiian Sugar Planters' Association, that Mr. F. E.
Thompson, the senior member of said firm, should make
inquiries in regard to the activities of said Filipino
labor federation and keep the said Hawaiian Sugar
Planters' Association advised of the activities of the offi-
cers of said federation and of the members thereof; that
in pursuance of said retainer the said F. E. Thompson
during all of the times hereinafter mentioned acted un-
der the terms thereof; that on or about the 26th day of
January, 1920, the said Pablo Manlapit solicited, and
thereafter on the same day had, an interview with the
said F. E. Thompson, at which interview said Manlapit
stated in effect that realizing the strike called by him
could not be much longer maintained he, the said Pablo
Manlapit, wanted to see what could be done with the
said F. E. Thompson, as attorney for the Hawaiian
Sugar Planters' Association, looking to the termination
of said strike and the return of the members of the
Filipino labor federation to their work on the sugar
plantations on said Island of Oahu; that after some
preliminary conversation the said Pablo Manlapit stated
that if he, the said F. E. Thompson, acting for the Ha-
waiian Sugar Planters' Association, would give him, the
said Manlapit, the sum of $50,000 he, the said Manlapit,
would call off and determine the strike in the morning
(meaning the morning of the 27th of January, 1920);
that said F. E. Thompson then and there refused to give

the said Pablo Manlapit the said sum of $50,000 or any
other sum, whereupon said Pablo Manlapit said in effect
that anybody would take a chance at making $50,000
and closed the interview. It is further alleged that said
request for the payment of the sum of $50,000 to him
was made by said Pablo Manlapit for the purpose and
intention of wrongfully acquiring for his own personal
gain from the said Hawaiian Sugar Planters' Association
the sum of $50,000 by calling off the said strike of the
said Filipino labor federation.

Upon the filing of this petition a rule was entered
requiring the respondent Pablo Manlapit to answer the
facts so alleged against him and to show cause on or
before the 4th day of March, 1920, at 2 o'clock p. m.
why his name should not be stricken from the roll of
attorneys because of his unfitness to be trusted with the
power of an attorney of said court. In response to this
order the respondent demurred, the grounds of demurrer
being: (1) That said petition fails to state facts suffi-
cient to charge the respondent with any offense against
the laws of the Territory of Hawaii; (2) that said peti-
tion fails to set forth facts sufficient to constitute mal-
practice or any other offense giving the court jurisdiction
herein; (3) that there is a misjoinder of necessary par-
ties herein in that it fails to show that any party ag-
grieved by any act of malpractice complains of the re-
spondent; (4) that it does not appear in and by said
petition that the relation of attorney and client existed
between the Filipino labor federation and the respondent
at any time. The demurrer was overruled and the re-
spondent comes to this court on an interlocutory appeal
allowed by the circuit judge.

Under the demurrer counsel for respondent has argued
several questions which we will notice. It is contended
that before he may be compelled to answer there should

be a complaint by the party aggrieved supported by his affidavit as to the truth of the allegations and that the complaint of the attorney general sworn to on information and belief is not sufficient to require him to answer. Fortunately the necessity for disbarment proceedings has not often arisen in this jurisdiction and local precedent is therefore limited, but a reference to the files of this court discloses that all of the more recent disbarment proceedings involving attorneys of this court were instituted by the attorney general and that the complaint in each case was sworn to by the attorney general on information and belief. In the case of *In re Davis,* 15 Haw. 377, it was decided that a complaint by the party aggrieved is not necessary and that in such a case an information may be filed by the attorney general. See also *In re Achi,* 8 Haw. 216. The character of verification required was not discussed in these cases but if the attorney general may institute the proceeding he must of necessity be permitted to verify his complaint on information and belief as in most cases he would only possess that character of knowledge of the facts. Act 19 S. L. 1919, which provides for the licensing of practitioners in the district courts of the Territory and for their punishment and disbarment, provides that "Said practitioners shall be summarily amenable to the courts of record, and may be fined, imprisoned or dismissed from the roll of practitioners for satisfactory cause, upon the complaint of any party aggrieved by their malpractice, or for nonpayment of moneys collected by them for private parties, or for any deceit or other gross misconduct." This provision is in exactly the same language found in section 2331 R. L. 1915 relating to the punishment and disbarment of practitioners in this court and was enacted after the decisions above referred to which construed section 2331. We think that the enactment of this provision

under these circumstances constituted a legislative approval of the decisions above cited. We therefore hold that under this statute the disbarment proceeding may be instituted by the attorney general and that the complaint may be verified by him upon information and belief.

It is also contended that the acts complained of must relate to the attorney's professional character and that those affecting his character as a man of integrity as a private citizen are not sufficient ground for instituting disbarment proceedings against him. It is further contended that it must appear that the relation of attorney and client existed between the attorney and the party aggrieved. In *Ex parte Wall*, 107 U. S. 265, 273, it is said: "It is laid down in all the books in which the subject is treated that a court has power to exercise a summary jurisdiction over the attorneys to compel them to act honestly towards their clients, and to punish them by fine and imprisonment for misconduct and contempts, and, in gross cases of misconduct, to strike their names from the roll. If regularly convicted of a felony an attorney will be struck off the roll as of course, whatever the felony may be, because he is rendered infamous. If convicted of a misdemeanor which imports fraud or dishonesty the same course will be taken. He will also be struck off the roll for gross malpractice or dishonesty in his profession, or for conduct gravely affecting his professional character. In Archbold's Practice, edition by Chitty, p. 148, it is said: 'The court will in general interfere in this summary way to strike an attorney off the roll, or otherwise punish him, for gross misconduct, not only in cases where the misconduct has arisen in the course of a suit, or other regular and ordinary business of an attorney, but where it has arisen in any other matter so connected with his professional character as

to afford a fair presumption that he was employed in or intrusted with it in consequence of that character.' " From this it would appear that the relation of attorney and client need not exist between the attorney and the party aggrieved in order to make the misconduct of the attorney ground for disbarment but the act with which he is charged must be of such a nature as to reflect upon his professional character. If an attorney may be disbarred because convicted of a misdemeanor which imports fraud or dishonesty we see no reason why he should not be disbarred for acts which import fraud or dishonesty although they may not constitute a criminal offense. Any act which imports fraud or dishonesty on the part of an attorney necessarily reflects upon his professional character. Any other gross misconduct which would reflect upon an attorney's professional character would also constitute sufficient grounds for disbarment.

The most serious question presented in this case is whether the facts charged against the respondent, when tested by the above principle, constitute sufficient grounds for striking his name from the roll. He is in effect charged with having a conversation with F. E. Thompson, of the firm of Thompson, Cathcart & Lewis, an attorney of this court employed by the Hawaiian Sugar Planters' Association, in which the respondent in his capacity as president of the Filipino labor federation proposed to call off and terminate an existing strike for the sum of $50,000; that when his proposal was refused he remarked that any one would take a chance on making $50,000 and closed the interview. No facts are alleged which would indicate that any fraud or deceit was used or attempted or that had the Hawaiian Sugar Planters' Association elected to accept his proposition he would not or could not terminate the strike.

It is not alleged that the respondent misrepresented

any fact or misrepresented his authority to act for the strikers. In fact the idea is negatived by the allegation that the proposal was made for the purpose of wrongfully acquiring the sum of $50,000 from the Hawaiian Sugar Planters' Association "by calling off the strike." The effect of this allegation is that had his proposal been accepted by the planters and the money paid the respondent intended to render, and would have rendered, the service for which he was asking payment. Under this state of facts no fraud was perpetrated and none attempted against the planters, neither does it appear that any fraud against the labor federation, for which respondent purported to act, was contemplated, much less accomplished. How, we may ask, was the money to be wrongfully acquired? There are no facts stated in the complaint by which we can judge that the money would have been wrongfully acquired had his proposal been accepted. An allegation, therefore, that he intended to wrongfully acquire it is a mere conclusion of the pleader and cannot be answered by the respondent. The attorney general's attempt to liken respondent's proposal to soliciting a bribe has not impressed us as sound and the authorities cited are therefore not in point. The respondent no doubt had a very fanciful idea of the liberality or gullibility of the sugar planters' association and its attorney otherwise his proposal would never have been made, but so far as his conduct is disclosed by the allegations of the complaint all semblance of fraud and deceit is lacking and no gross misconduct is shown.

Our conclusion is that the facts charged against the respondent in the complaint do not constitute a sufficient ground for striking his name from the roll and the demurrer should have been sustained.

For the reasons herein the order overruling the demurrer is reversed and the cause remanded.

*J. Lightfoot,* Deputy Attorney General, for petitioner.

*R. J. O'Brien* (*Andrews, Pittman & O'Brien* on the brief) for respondent.

### DISSENTING OPINION OF COKE, C. J.

I cannot agree with the conclusions reached in the foregoing opinion holding that the demurrer to the petition should be sustained. Gross misconduct is one of the grounds specified in Act 19 S. L. 1919 for which an attorney may be dismissed from the roll of practitioners and includes all wrongful or improper conduct made conspicuous because of the gravity of the misdeed.

It appears from the petition herein filed by the attorney general that the respondent Manlapit was the president of the Filipino labor federation; that he offered to call off the strike of Filipino laborers if the representative of the Hawaiian Sugar Planters' Association would pay him the sum of $50,000; that upon his offer being declined he stated that anybody would take a chance at making $50,000. It is further alleged in the petition that Manlapit's purpose and intention were to wrongfully acquire for his own personal gain from the Hawaiian Sugar Planters' Association the sum of $50,000.

I am of the opinion that these allegations sufficiently set forth gross misconduct. It seems to me that they clearly divulge an attempt on the part of Manlapit to corruptly use his office as president of the Filipino labor federation to enrich himself to the extent of $50,000. This I think constituted gross misconduct on his part. In order to lay the basis for a disbarment proceeding it is not necessary that the attorney's misconduct should be such as would make him liable to criminal prosecution. If it be shown that he is unfit to discharge the duties of his office or that he is unworthy of confidence,

even though the conduct is outside of his professional dealing, it is sufficient. If an attorney is not moral or is not of good demeanor he may be disbarred. The license which he bears is a badge of respectability—a patent of trustworthiness—and he ought not to be permitted to retain his license if he is shown to be unworthy of it.

The allegations of the petition divulge conduct and turpitude on the part of the respondent sufficiently gross to put him on trial at the bar of the court below.