431 F.2d 135
 13 A.L.R.Fed. 850
 James E. SWANN et al., Appellees,
v.
CHARLOTTE-MECKLENBURG BOARD OF EDUCATION, a public body
corporate, William E. Poe, Henderson Belk, Dan Hood, Ben F.
Huntley, Betsey Kelly, Sam McNinch, III, and Carlton G.
Watkins, Appellants, United States of America, Amicus Curiae.
James E. SWANN and Edith Swann, minors by their parents and
next friends, Rev. and Mrs. Darius L. Swann, et
al., Appellants,
v.
CHARLOTTE-MECKLENBURG BOARD OF EDUCATION, a public body
corporate, et al., Appellees, United States of
America, Amicus Curiae.
 Nos. 14517, 14518.
 United States Court of Appeals, Fourth Circuit.
 April 7, 1970.
 
 ORDER OF DISQUALIFICATION AND MEMORANDUM OF DECISION
 CRAVEN, Circuit Judge.
 
 
 1
 This is an appeal from orders of the United States District Court for the Western District of North Carolina entered in 1969 and 1970 requiring the Charlotte-Mecklenburg School Board to implement in various ways its constitutional duty to establish a unitary school system. I have previously treated a letter to me from one of counsel in the case as a motion to consider whether or not I am disqualified by 28 U.S.C. 47 from participating as a member of the United States Court of Appeals for the Fourth Circuit in the hearing and disposition of the appeal. After careful consideration, I conclude that I am disqualified by the statute.
 
 
 2
 In 1965 I was one of the judges of the United States District Court for the Western District of North Carolina. In that capacity, I heard and determined the case of Swann et al. v. Charlotte-Mecklenburg Board of Education, Civil No. 1974, and filed an opinion in the case on July 14, 1965, 243 F.Supp. 667, affirmed, 369 F.2d 29. The questions before me then were whether certain school zones had been gerrymandered to prevent the mixing of races, whether there was justification for delaying geographical zoning with respect to ten schools, whether the desegregation of teachers and staff ought to be accomplished at once, and the validity of a freedom-of-choice option engrafted on top of a zoning plan.
 
 
 3
 In my published opinion discussing these questions, I said, among many other things,
 
 
 4
 'It is undoubtedly true that one could deliberately sit down with a purpose in mind to change lines in order to increase mixing of the races and accomplish the same with some degree of success. I know of no such duty upon either the School Board or the District Court * * *''The question before the District Court is not whether a 'better' zone might be established but simply whether the zone which was established is an arbitrary and unreasonable one based on race and without regard to natural boundary lines. Thus far it has not been held unconstitutional to assign children to a school on the basis of their residences in a cohesive and contiguous geographical area * * *' Swann v. Charlotte-Mecklenburg Board of Education, 243 F.Supp. 667, 670 (1965).
 
 
 5
 I found as a fact that the school board had rezoned Crestdale and Morgan Schools for the purpose of achieving a racial mix and concluded, 'This does not sound like a School Board bent upon maintaining a segregated system.' Id. at 671.
 
 
 6
 My ultimate conclusion was that the plan proposed by the board in 1965, as amended with respect to teachers and staff, 'is a sufficient compliance with the duty imposed upon the board by the Constitution as interpreted in Brown v. Board of Education of Topeka, Shawnee County, Kansas (347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873), * * * and subsequent decisions.' Id. at 671.
 
 
 7
 The present case on appeal is facially the same case I decided in 1965: it bears the same Western North Carolina number, Civil No. 1974, and is between the same parties involving the desegregation of the same schools. The matters recently decided by Judge McMillan were brought before him by motion in the cause. The questions that are now to be determined on appeal from Judge McMillan include this one: whether the present Mecklenburg school system is unconstitutional in that it is illegally segregated according to race, or, conversely, whether the school board has been and is now operating a unitary school system.
 
 
 8
 The statute I must apply is the following one:
 
 
 9
 28 U.S.C. 47, Disqualification of Trial Judge to Hear Appeal. 'No judge shall hear or determine an appeal from the decision of a case or issue tried by him.'
 
 
 10
 This statute has not been construed by the Supreme Court, but it appears to be a simplified version of a portion of the Evarts Act of March 3, 1891, 26 Stat. 826. Professor Wright notes that an important change made by the Evarts Act was 'the provision that no judge was to sit on an appeal in a case that he heard below. Prior to 1891 it happened not infrequently that on appeal from the district court to the circuit court the district judge who had decided against appellant in the district court would be found hearing the appeal.' Wright, Federal Courts, 2nd ed. Section 1, p. 5.
 
 
 11
 Every time the Supreme Court has had occasion to look at the predecessor statute to 28 U.S.C. 47 it has been strictly construed. In Rexford v. Brunswick-Balke-Collender Co., 228 U.S. 339, 33 S.Ct. 515, 57 L.Ed. 864 (1913), the Court interpreted the statute as follows:
 
 
 12
 'The terms of the statute, before quoted, are both direct and comprehensive. Its manifest purpose is to require that the circuit court of appeals be composed in every hearing of judges none of whom will be in the attitude of passing upon the propriety, scope, or effect of any ruling of his own made in the progress of the cause in the court of first instance, and to this end the disqualification is made to arise, not only when the judge has tried or heard the whole cause in the court below, but also when he has tried or heard any question therein which it is the duty of the circuit court of appeals to consider and pass upon. American Const. Co. v. Jacksonville, T. & K.W.R. Co., 148 U.S. 372, 387, 492, 13 S.Ct. 758, 37 L.Ed. 486; Moran v. Dillingham, 174 U.S. 153, 19 S.Ct. 620, 43 L.Ed. 930. That the question may be easy of solution, or that the parties may consent to the judge's participation in its decision, can make no difference, for the sole criterion under the statute is, does the case in the circuit court of appeals involve a question which the judge has tried or heard in the course of the proceedings in the court below?'
 
 
 13
 In Moran v. Dillingham, 174 U.S. 153, 19 S.Ct. 620, 43 L.Ed. 930 (1899), the Court said this about the predecessor statute:
 
 
 14
 'The intention of congress, in enacting that no judge before whom 'a cause or question may have been tried or heard,' in a district or circuit court, 'shall sit on the trial or hearing of such cause or question,' in the circuit court of appeals, manifestly was to require that court to be constituted of judges uncommitted and uninfluenced by having expressed or formed an opinion in the court of the first instance. Whatever may be thought of the policy of this enactment, it is not for the judiciary to disregard or to fritter away the positive prohibition of the legislature.
 
 
 15
 The enactment, alike by its language and by its purpose, is not restricted to the case of a judge's sitting on a direct appeal from his own decree upon a whole cause, or upon a single question. A judge who has sat at the hearing below of a whole cause at any stage thereof is undoubtedly disqualified to sit on the circuit court of appeals at the hearing of the whole cause at the same or at any later stage. And, as 'a cause,' in its usual and natural meaning, includes all questions that have arisen or may arise in it, there is strong reason for holding that a judge who has once heard the cause, either upon the law or upon the facts, in the court of first instance, is thenceforth disqualified to take part, in the circuit court of appeals, at the hearing and decision of the cause or of any question arising therein. But, however that may be, a judge who has once heard the cause upon its merits in the court of first instance is certainly disqualified from sitting in the circuit court of appeals on the hearing and decision of any question, in the same cause, which involves in any degree matter upon which he had occasion to pass in the lower court.'
 
 
 16
 I believe the interpretations of the predecessor statute by the Supreme Court bear strongly upon the present version codified as 28 U.S.C. 47. It is true that inferior federal courts have more loosely construed Section 47 (and its predecessors) but I think, with Professor Wright, that such constructions seem to depart from 'what might appear from the face of the statute.' 2B Barron & Holtzoff, Federal Practice and Procedure, 89 (Wright ed. 1961). A decision such as United States v. Perlstein, 126 F.2d 789, 806 (3d Cir. 1942), is, to say the least, hard to reconcile with the flat language of the statute.
 
 
 17
 The questions before me in 1965 were similar to those before Judge McMillan in 1968 and 1969. Indeed, it seems to me the ultimate question was the same: what may a school board be compelled to do to dismantle a dual system and implement a unitary one, or how much school board action is enough?
 
 
 18
 The sense and purpose of the disqualifying statute was dramatically expressed many years ago: 'Such an appeal is not from Phillip drunk to Phillip sober, but from Phillip sober to Phillip intoxicated with the vanity of a matured opinion and doubtless also a published decision.'[1]
 
 
 19
 I believe the statute prevents my sitting on this appeal, and I therefore enter this order of disqualification and decline to serve.
 
 
 
 [1]
 From an address by Walter B. Hill to the American Bar Association at its annual meeting in 1899, 12 ABA Rep. 289, 307 (1889), said to have been 'influential' in the development of the Evarts Act. Frankfurter and Landis, The Business of the Supreme Court, 87 (1928)