UNITED STATES of America,
Plaintiff–Appellee,

v.

Khanh Phuong NGUYEN,
Defendant–Appellant.

United States of America,
Plaintiff–Appellee,

v.

Tuyet Mai Thi Phan, Defendant–
Appellant.

Nos. 00–10353, 00–10406.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 12, 2002.[*]

Filed March 25, 2002.

---

[*] The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a)(2).

Howard Trapp, Hagatna, Guam, for defendant-appellant Nguyen; Kari A. Wickland, Hagatna, Guam, for defendant-appellant Phan.

Mark E. Kondas, Assistant United States Attorney, Hagatna, Guam, for the plaintiff-appellee.

Before: SCHROEDER, Chief Judge, GOODWIN, Circuit Judge and MUNSON,** District Judge.

** The Honorable Alex R. Munson, Chief District Judge for the District of the Northern

GOODWIN, Circuit Judge.

A jury convicted Defendants Khanh Phuong Nguyen ("Nguyen") and Tuyet Mai Thi Phan ("Phan") of drug violations. Nguyen and Phan appeal. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## BACKGROUND

While conducting a drug detector dog sniff of mail parcels at the Guam Main Postal Facility, Guam Customs Officer Franklin J. Gutierrez, Jr.'s dog "Hooch" alerted to an express mail parcel addressed to Linda Phan, P.O. Box 9104, Tamuning, Guam. Officer Gutierrez obtained a search warrant and took the parcel to the Guam Customs Contraband Enforcement Team Office. A Guam Customs officer X-rayed the parcel, which was found to contain, among other items, five cylindrical objects. An officer then opened the parcel and discovered amphetamine packed in five small canisters. Officers proceeded to replace the crystal amphetamine with rock salt and wire the package so that it would send a radio signal when opened. After restoring the parcel to its original wrapping, drug enforcement agents arranged with the postal agents to make a controlled delivery.

Postal Inspector Pitts arranged for a notice of Express Mail to be placed in post office box 9104. Defendant Appellant Phan retrieved the notice, presented it to a postal clerk, and received the package. Phan signed for the package as "Lin Da Phan." At trial, Inspector Pitts testified that Phan told him that "Linda" was her sister. Phan left the post office with the parcel and got into a car driven by Co Defendant Nguyen's younger sister, Tina.

Mariana Islands, sitting by designation.

Ai Ngoc Phan ("Ai") was in the back seat with a two-year old boy, Kevin Nguyen ("Kevin"). Both Nguyen and Phan are related to Tina, Ai, and Kevin, as well as to Kevin's father Thanh Phuong Nguyen, who lives in California.

Agents kept the car under surveillance and followed it to Guam Memorial Hospital where it stopped. An unidentified person in the car deposited something in a refuse container near the Emergency Room. The car then moved to a residential area in Tamuning, ultimately parking at an apartment complex in space number nine. At trial, the government characterized the motor trip as having taken a "circuitous" route.

At the apartment complex, agents saw two women exit the car with a child and enter Apartment number six, which was later identified as the apartment occupied by Nguyen. Agents meanwhile became aware by a radio signal that the package had been opened. The agents then approached the apartments, where they observed Phan near the sliding back door of Apartment nine. Agents testified that they saw Phan walk from her apartment over to Nguyen's apartment.

Without a warrant, the agents entered Apartment six and found Phan and Nguyen in the living room. Agents saw parts of the opened parcel and some of its contents inside the front bedroom. The agents found three cylindrical objects in the bathtub, and two in the toilet bowl. Phan and Nguyen were then advised of their rights, chose to remain silent, and were arrested.

The agents then obtained a warrant and searched Apartment six. They found drug paraphernalia, packaging material, and $6,000 cash.

When the agents had previously repacked the parcel, they had installed a "clue spray" that would be revealed under black light if it later showed up on some-one's hands. When arrested, Nguyen's hands bore the tell-tale clue. Phan's hands were clean. Phan was in her kitchen cooking lunch when the package was opened, she says, and there is no evidence to contradict her. Tina, who was not indicted, also had a trace of the clue material on one of her fingers.

The contents of the five canisters, already under government control, were weighed and analyzed and found to contain 443.8 grams of methamphetamine. The hospital garbage can was searched and yielded an express mail container which bore a Westminster, California, postmark dated November 30, 1999, and the following words and figures: (671) 646-2330 (a Guam area code number that was not identified as assigned to anyone) and "To: Linda Phan, Post Office Box 91, Tamuning, Guam 96911." The label also contained the words: "From Michael Tran, 12181 Candy Lane Garden Grove, California," and a(714) area code number that failed to check out as active or valid.

Garden Grove police checked the Garden Grove return address and found no Michael Tran living there. But on December 1, 1999, nearby Santa Anna police interviewed a man named Thanh Phuong Nguyen ("Thanh"), whose driver's license gave the Candy Lane address as the address of the licensee. According to Santa Anna police officer Sergio Camacho, Thanh claimed that he lived at 12181 Candy Lane. Although Thanh did not in fact reside at 12181 Candy Lane, California police officers did locate another, unrelated, Nguyen family that had formerly lived at the Candy Lane address but had recently sold the house.

The interview in Garden Grove would never have been reported to officers in Guam had not police computers turned up the Candy Lane address in the Guam investigation. Other than the express mail wrapper, and Thanh's driver's license, no

evidence connected Thanh with the house at 12181 Candy Lane. He did, however, turn out to be Defendant Nguyen's brother, and Defendant Phan's nephew.

On December 15, 1999, the United States Grand Jury for the District of Guam returned an Indictment charging both Nguyen and Phan with (1) conspiracy to import methamphetamine (in violation of 21 U.S.C. §§ 952(a), 960, and 963); (2) knowingly aiding and abetting each other to import methamphetamine (in violation of 18 U.S.C. § 2, and 21 U.S.C. §§ 952 and 960); and (3) attempting to possess over fifty (50) grams of methamphetamine with intent to distribute (in violation of 21 U.S.C. §§ 841(a)(1) and 846).

On the first day of trial, Defendants objected to any introduction of evidence about Thanh's connection to Defendants. The District Court overruled the Defendants' objection, stating that the evidence was relevant because, *inter alia,* the address on Thanh's driver's license was same as that listed on the return address of the parcel.

On March 29, 2000, the Defendants were convicted on all counts. The District Court sentenced each Defendant to the custody of the Bureau of Prisons for two hundred twelve months on each count, to be followed by a five year term of supervised release.

## DISCUSSION

Appellants Nguyen and Phan challenge the admission into evidence of the consanguinity between themselves and Thanh, the holder of the California driver's license bearing the Candy Lane address. Appellants argue that the District Court abused its discretion in admitting evidence regarding Appellants' familial relationship with Thanh. Appellants also argue that the evidence admitted regarding their familial relationship with Thanh was insufficient to support their convictions.

We review for an abuse of discretion the trial court's evidentiary rulings. *See United States v. Hicks,* 103 F.3d 837, 843 (9th Cir.1996). "Evidentiary rulings will be reversed for abuse of discretion only if such nonconstitutional error more likely than not affected the verdict." *United States v. Hankey,* 203 F.3d 1160, 1166 (9th Cir.2000).

Here, the evidence connecting Thanh's driver's license to the return address on the package received by Defendant Phan was relevant and admissible. The tracing of the address on the package label back to Nguyen's brother in California was good police work, and information gleaned from that tracing was competent, relevant evidence from which the jury could infer that the family members in Guam would know from the coded words and numbers on the package who sent it and what it contained. That inference is fortified by the manner in which the person who picked up the package at the post office explained the name "Linda," and the route the package took on its way to the apartment where the defendants were arrested.

Further, the possession of the driver's license by Thanh, at about the time a package bearing the same address was mailed, was verified by police records, photo identification, and finger print records. The use of this evidence by the government, over the objection that it was irrelevant and prejudicial, did not violate Federal Rules of Evidence 401, 402, or 403. The evidence was highly relevant. Of course it was harmful to the defense case, but that is a common function of relevant evidence connecting a suspect to a crime.

Likewise, the evidence that Thanh and Defendant Nguyen were brother and sister could be considered by the jury as tending to prove that Defendant Phan did not just accidentally pick up a package mailed by mistake from an unknown Cali-

fornian to a total stranger in Guam, a theory the defense wanted the jury to believe.

Rule 402 makes relevant evidence admissible, while Rule 403 sets limits on the admissibility of relevant evidence. The appeals make much of Rule 403, claiming that the challenged evidence was of a very low level of relevance and possessed a very high level of prejudice. The defense overstates the proposition both ways. In viewing the challenged evidence in the light of the record as a whole, the level of relevance is high, and the prejudice level is low in comparison to the high probative value of the evidence. The District Court clearly performed the necessary Rule 403 weighing. We conclude that there was no abuse of discretion in receiving the evidence.

We also conclude that the evidence of Thanh's consanguinity with the Defendants, in conjunction with other evidence, was sufficient to support the Defendants' convictions for conspiring to import, aiding and abetting each other to import, and attempting to possess with intent to distribute, over fifty grams of methamphetamine.

■■■ There is sufficient evidence to support a conviction if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Crawford,* 239 F.3d 1086, 1092 (9th Cir.2000). An appellate court "must respect the exclusive province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts, by assuming that the jury resolved all such matters in a manner which supports the verdict." *United States v. Gillock,* 886 F.2d 220, 222 (9th Cir.1989).

■■■ Here, the government's theory was that this whole transaction was a family plan involving, *inter alia,* Defendant Phan, Defendant Nguyen, and Nguyen's brother, who, although not indicted in this case, very probably mailed, or caused to be mailed, the incriminating package from California to Phan. Although this court has established that guilt cannot be proven by mere association, *see United States v. Garcia,* 151 F.3d 1243 (9th Cir.1998), the case now before us does not depend on mere association. The evidence connecting the California source of the package to the Guam family contained abundant facts from which the jury could infer that the two family members in Guam knew very well what was in the package when they opened it.

For example, the evidence that Nguyen's brother in California was in possession of a driver's license falsely showing the Candy Lane address to be his own raises the possibility that Nguyen knew when she opened the package that it contained contraband. An innocent Christmas package would not have produced a trip to a refuse container near the hospital to dispose of the wrapper with its tell-tale information that someone known to the relatives in Guam was connected with the mailing of the package bearing that address. The mailing of a package a few weeks before Christmas by a brother in California to a sister in Guam is not surprising, and, by itself is a neutral act. The employment of Americanized assumed names by both the sender and the receiver, while intrinsically innocent, makes the neutrality of the mailing questionable in light of other circumstances to be consid-

ered by the jury. Phan's brief argues that she did not understand English very well and was confused. But the jury could believe that the sequence of events proved that Phan was not confused. There was plenty of evidence of intent to import, and of intent to possess, and of a completed attempt to import and to possess, frustrated only by the intervention of the government turning the "ice" into rock salt. And, most importantly, the evidence that the five unopened cylindrical objects were in the toilet and bathtub when the police entered the apartment crates a strong inference that the women knew exactly what was contained in the package. Phan picked up the package, delivered it to Nguyen, who unwrapped it and got the "clue" material on her hands. The picture of two innocent women eagerly opening a Christmas package with no idea of what it contained is tainted by the presence of nearly a hundred little plastic zip lock bags and $6,000 cash in the apartment. In light of the $6,000 in cash, the baggies began to look like containers for whatever the contents of the package may have been divided into. The evidence, which is more consistent with guilty knowledge than with innocence, fits together like so many pieces of a puzzle.

Appellants correctly point out that the evidence was disputed on a number of points that the jury had to consider. For example, the postal inspector testified that, when she picked up the package, Defendant Phan was asked to show ID. She produced a Social Security card, and when asked: "Are you Linda Phan?" said, "No, she is my sister." Phan denies making that statement. A jury could believe she did say it. If so, the jury could infer that, because Phan does not have a sister named Linda, she was concealing her knowledge of wrongdoing.

Finally, Phan contends, without conceding guilt, that she should at least be resentenced as a minor participant who merely went to the post office to pick up a package for her niece. However, the jury heard the whole story, and the judge who pronounced the sentence had reviewed the evidence on post trial motions, and concluded that the verdict was supported by the evidence. Both Defendants having been found guilty as charged, and the amount of the drugs not challenged; the sentence was consistent with the applicable guidelines.

AFFIRMED.