# NGUYEN v. UNITED STATES

No. 01–10873.   Argued March 24, 2003—Decided June 9, 2003*

---

*Together with No. 02–5034, *Phan* v. *United States*, also on certiorari to the same court.

70

STEVENS, J., delivered the opinion of the Court, in which O'CONNOR, KENNEDY, SOUTER, and THOMAS, JJ., joined. REHNQUIST, C. J., filed a dissenting opinion, in which SCALIA, GINSBURG, and BREYER, JJ., joined, *post,* p. 83.

*Jeffrey T. Green* argued the cause for petitioners. With him on the briefs were *Howard Trapp* and *Rawlen T. Mantanona,* both by appointment of the Court, 538 U. S. 920, *Carter G. Phillips,* and *Eric A. Shumsky.*

*Patricia A. Millett* argued the cause for the United States. With her on the brief were *Solicitor General Olson, Assistant Attorney General Chertoff,* and *Deputy Solicitor General Dreeben.*†

JUSTICE STEVENS delivered the opinion of the Court.

These cases present the question whether a panel of the Court of Appeals consisting of two Article III judges and one Article IV judge had the authority to decide petitioners' appeals. We conclude it did not, and we therefore vacate the judgments of the Court of Appeals.

## I

Petitioners are residents of the island of Guam, which has been a possession of the United States since the end of the Spanish-American War.[1] The Navy administered the island, except for the period of Japanese occupation during World War II, until Congress established Guam as an unincorporated Territory with the passage of the Organic Act of Guam in 1950.[2] Pursuant to Congress' authority under Article IV, § 3, of the Constitution to "make all needful Rules and Regulations respecting the Territory or other Property belonging

---

†*Gordon Rhea* filed a brief for Thomas K. Moore as *amicus curiae* urging affirmance.

[1] See Treaty of Paris, Art. II, 30 Stat. 1755 (1899).

[2] 64 Stat. 384. See generally A. Leibowitz, Defining Status: A Comprehensive Analysis of United States Territorial Relations 313, 323 (1989).

to the United States," the Organic Act of Guam created a territorial court, the District Court of Guam, and vested it with subject-matter jurisdiction over causes arising under both federal law and local law.[3]  Petitioners were tried before a jury, convicted, and sentenced in the District Court of Guam to lengthy prison terms for federal narcotics offenses. Petitioners do not dispute that court's jurisdiction to conduct their criminal trial and enter judgments of conviction.

As authorized by statute,[4] petitioners appealed their convictions to the Court of Appeals for the Ninth Circuit.  The panel convened to hear their appeals included the Chief Judge and a Senior Circuit Judge of the Ninth Circuit, both of whom are, of course, life-tenured Article III judges who serve during "good Behaviour" for compensation that may not be diminished while in office.   U. S. Const., Art. III, § 1. The third member of the panel was the Chief Judge of the District Court for the Northern Mariana Islands.  That court is not an Article III court but an Article IV territorial court with subject-matter jurisdiction substantially similar

---

[3] See Organic Act of Guam § 22, 64 Stat. 389, 48 U. S. C. § 1424.  "The 'District Court of Guam' rather than 'United States District Court of Guam' was chosen as the court's title, since it was created under Art. IV, § 3, of the Federal Constitution rather than under Art. III, and since § 22 vested the court with original jurisdiction to decide both local and federal-question matters."  *Guam* v. *Olsen,* 431 U. S. 195, 196–197, n. 1 (1977) (citing S. Rep. No. 2109, 81st Cong., 2d Sess., 12 (1950)).  The Guam Legislature was authorized as well to create local courts and transfer to them jurisdiction over certain cases that otherwise could be heard by the District Court of Guam.  See *Olsen,* 431 U. S., at 200–201 (citing *Agana Bay Dev. Co. (Hong Kong) Ltd.* v. *Supreme Court of Guam,* 529 F. 2d 952, 959 (CA9 1976) (Kennedy, J., dissenting)).

[4] Title 28 U. S. C. § 1294(4) provides:

"[A]ppeals from reviewable decisions of the district and territorial courts shall be taken to the courts of appeals as follows:

.          .          .          .          .

"(4) From the District Court of Guam, to the Court of Appeals for the Ninth Circuit."

to the jurisdiction of the District Court of Guam.[5] The Chief Judge of the District for the Northern Mariana Islands, unlike an Article III judge, is appointed by the President and confirmed by the Senate for a term of 10 years, "unless sooner removed by the President for cause."[6]

The highly unusual presence of a non-Article III judge as a member of the Ninth Circuit panel occurred during special sittings in Guam and the Northern Mariana Islands. When the Court of Appeals heard arguments in Guam, the Chief Judge of the Ninth Circuit invited the Chief Judge of the District Court for the Northern Mariana Islands to participate. A judge of the District Court of Guam was similarly invited to participate in appeals heard while the Ninth Circuit sat in the Northern Mariana Islands.

The panel affirmed petitioners' convictions without dissent. 284 F. 3d 1086 (2002). Neither Nguyen nor Phan objected to the composition of the panel before the cases were submitted for decision; neither petitioner sought rehearing after the Court of Appeals rendered judgment to challenge the panel's authority to decide their appeals. Each did, however, file a petition for certiorari raising the question whether the judgment of the Court of Appeals is invalid because of the participation of a non-Article III judge on the panel. In accordance with this Court's Rule 10(a), we granted the writ, 537 U. S. 999 (2002), to determine whether

---

[5] "The District Court for the Northern Mariana Islands shall have the jurisdiction of a District Court of the United States, including, but not limited to, the diversity jurisdiction provided for in section 1332 of title 28 and that of a bankruptcy court of the United States.

"The district court shall have original jurisdiction in all causes in the Northern Mariana Islands not described in subsection (a) of this section jurisdiction over which is not vested by the Constitution or laws of the Northern Mariana Islands in a court or courts of the Northern Mariana Islands." 48 U. S. C. § 1822. The text of the statute closely follows the corresponding provisions of the Organic Act of Guam. See S. Rep. No. 95–475, p. 3 (1977).

[6] 48 U. S. C. § 1821(b)(1).

the Court of Appeals had "so far departed from the accepted and usual course of judicial proceedings as to call for an exercise of this Court's supervisory powers." Pet. for Cert. in No. 01–10873, p. 6; Pet. for Cert. in No. 02–5034, p. 5. For the following reasons, we find these to be appropriate cases for the exercise of that power.

## II

We begin with the congressional grant of authority permitting, in certain circumstances, the designation of district judges to serve on the courts of appeals. In relevant part, the designation statute authorizes the chief judge of a circuit to assign "one or more district judges within the circuit" to sit on the court of appeals "whenever the business of that court so requires." 28 U. S. C. § 292(a). Section 292(a) itself does not explicitly define the "district judges" who may be assigned to the court of appeals. However, as other provisions of law make perfectly clear, judges of the District Court for the Northern Mariana Islands are not "district judges" within the meaning of § 292(a).

Outside of § 292(a), Title 28 contains several particularly instructive provisions. The term "district court" as used throughout Title 28 is defined to mean a " 'court of the United States'" that is "constituted by chapter 5 of this title." § 451. Chapter 5 of Title 28 in turn creates a "United States District Court" for each judicial district. § 132(a) ("There shall be in each judicial district a district court which shall be a court of record known as the United States District Court for the district"). And "district judge[s]" are established as the members of those courts. § 132(b) ("Each district court shall consist of the district judge or judges for the district in regular active service"). The judicial districts constituted by Chapter 5 are then exhaustively enumerated. § 133(a) ("The President shall appoint, by and with the advice and consent of the Senate, district judges for the several ju-

dicial districts, as follows [listing districts]"). Lastly, Chapter 5 describes "district judges" as holding office "during good behavior." § 134(a).

Taking these provisions together, § 292(a) cannot be read to permit the designation to the court of appeals of a judge of the District Court for the Northern Mariana Islands. Significantly, the District Court for the Northern Mariana Islands is not one of the courts constituted by Chapter 5 of Title 28, nor is that court even mentioned within Chapter 5.[7] See § 133(a). Because the judges of the District Court for the Northern Mariana Islands are appointed for a term of years and may be removed by the President for cause, they also do not satisfy the command for district judges within the meaning of Title 28 to hold office during good behavior. § 134(a).

The Government agrees these statutory provisions are best read together as not permitting the Chief Judge of the Northern Mariana Islands to sit by designation on the Ninth Circuit. The Government maintains, however, that the erroneous designation in these cases was not plainly impermissible because Title 28 does not expressly forbid it or explicitly define the term "district judge" separately from the term "district court." This contention requires an excessively strained interpretation of the statute. To be sure, a literal reading of the words "district judges" in isolation from the rest of the statute might arguably justify assigning the Chief Judge of the District Court for the Northern Mariana Islands for service on the Court of Appeals, for he is called a "district judge" of a court "within the [Ninth] [C]ircuit." But a literal reading of that sort is so capacious that it would also justify the designation of "district judges" of any number of

---

[7] The District Court for the Northern Mariana Islands is instead established in Chapter 17 of Title 48 ("Territories and Insular Possessions"). See § 1821.

*state* courts "within" the Ninth Circuit.[8] The statute cannot plausibly be interpreted to authorize the improper panel assignment in these cases.

Moreover, we do not read the designation statute without regard for the "historic significance" of the term "United States District Court" used in Title 28. *Mookini* v. *United States*, 303 U. S. 201, 205 (1938). "[W]ithout an addition expressing a wider connotation," that term ordinarily excludes Article IV territorial courts, even when their jurisdiction is similar to that of a United States District Court created under Article III. *Ibid.* See also *Summers* v. *United States*, 231 U. S. 92, 101–102 (1913) ("[T]he courts of the Territories may have such jurisdiction of cases arising under the Constitution and laws of the United States as is vested in the circuit and district courts, but this does not make them circuit and district courts of the United States"); *Stephens* v. *Cherokee Nation*, 174 U. S. 445, 476–477 (1899) ("It must be admitted that the words 'United States District Court' were not accurately used . . . [to refer to] the United States Court in the Indian Territory"). Construing the relevant statutory provisions together with further aid from historical usage, it is evident that Congress did not contemplate the judges of the District Court for the Northern Mariana Islands to be "district judges" within the meaning of § 292(a). It necessarily follows that the appointment of one member of the panel deciding petitioners' appeals was unauthorized.[9]

---

[8] Alaska, Hawaii, Idaho, Montana, Nevada, and Washington are all States within the Ninth Circuit whose judiciaries include "district judges." See Alaska Stat. §§ 22.15.010, 22.15.020, 22.20.010 (2002); Haw. Const., Art. VI, § 1; Haw. Rev. Stat. § 604–1 (1993); Idaho Const., Art. V, § 11; Idaho Code § 1–701 (1948–1998); Mont. Const., Art. VII, §§ 1, 4, 6; Nev. Const., Art. 6, §§ 5–6; Nev. Rev. Stat. § 1.010 (1995); Wash. Const., Art. IV, § 6 (West Supp. 2003); Wash. Rev. Code §§ 3.30.015, 3.30.030, 3.34.010, 3.66.010 (1988 and West Supp. 2003).

[9] Petitioners contend that the participation of an Article IV judge on the panel violated structural constitutional guarantees embodied in Article III and in the Appointments Clause, Art. II, § 2, cl. 2, of the Constitu-

## III

Although the Government concedes that the panel of the Court of Appeals was improperly constituted, it advances three grounds on which the judgments below may rest undisturbed. Two of the grounds on which we are urged to affirm concern petitioners' failure to object to the panel's composition in the Court of Appeals. Relying on the so-called *"de facto* officer" doctrine, the Government contends petitioners' failure to challenge the panel's composition at the earliest practicable moment completely forecloses relief in this Court. The Government also contends that petitioners do not meet the requirements for relief under plain-error review. The presence of a quorum of two otherwise-qualified judges on the Court of Appeals panel is invoked as the third ground sufficient to support the decision below. We do not find these contentions persuasive.

The *de facto* officer doctrine, we have explained, "confers validity upon acts performed by a person acting under the color of official title even though it is later discovered that the legality of that person's appointment or election to office is deficient." *Ryder* v. *United States*, 515 U. S. 177, 180 (1995). Whatever the force of the *de facto* officer doctrine in other circumstances, an examination of our precedents concerning alleged irregularities in the assignment of judges does not compel us to apply it in these cases.

Typically, we have found a judge's actions to be valid *de facto* when there is a "merely technical" defect of statutory authority. *Glidden Co.* v. *Zdanok*, 370 U. S. 530, 535 (1962) (plurality opinion of Harlan, J.). In *McDowell* v. *United States*, 159 U. S. 596, 601–602 (1895), for example, the Court declined to notice alleged irregularities in a Circuit Judge's designation of a District Judge for temporary service in another district. See also *Ball* v. *United States*, 140 U. S. 118,

tion. We find it unnecessary to discuss the constitutional questions because the statutory violation is clear.

128–129 (1891) (assigned judge had *de facto* authority to replace a deceased judge even though he had been designated to replace a disabled judge). We observed in *McDowell*, however, that the judge whose assignment had been questioned was otherwise qualified to serve, because he was "a judge of the United States District Court, having all the powers attached to such office," and because the Circuit Judge was otherwise empowered to designate him. 159 U. S., at 601.

By contrast, we have agreed to correct, at least on direct review, violations of a statutory provision that "embodies a strong policy concerning the proper administration of judicial business" even though the defect was not raised in a timely manner. *Glidden*, 370 U. S., at 536 (plurality opinion). In *American Constr. Co.* v. *Jacksonville, T. & K. W. R. Co.*, 148 U. S. 372 (1893), the case Justice Harlan cited for this proposition in *Glidden*, a judgment of the Circuit Court of Appeals was challenged because one member of that court had been prohibited by statute from taking part in the hearing and decision of the appeal.[10] This Court succinctly observed: "If the statute made him incompetent to sit at the hearing, the decree in which he took part was unlawful, and perhaps absolutely void, and should certainly be set aside or quashed by any court having authority to review it by appeal, error or *certiorari*." 148 U. S., at 387. The *American Constr. Co.* rule was again applied in *William Cramp & Sons Ship & Engine Building Co.* v. *International Curtiss Marine Tur-*

---

[10] The petitioners in *American Constr. Co.* challenged the participation of a Circuit Judge who, while sitting as a trial judge, had entered an order closely related to the matter under review in the Circuit Court of Appeals. At the time, the relevant statute governing the composition of the circuit courts of appeals provided that "no justice or judge before whom a cause or question may have been tried or heard in a district court, or existing circuit court, shall sit on the trial or hearing of such cause or question in the circuit court of appeals." Evarts Act, ch. 517, §3, 26 Stat. 827.

*bine Co.*, 228 U. S. 645 (1913), even though the parties had consented in the Circuit Court of Appeals to the participation of a District Judge who was not permitted by statute to consider the appeal. *Id.*, at 650. Rather than sift through the underlying merits, we remanded to the Circuit Court of Appeals "so that the case may be heard by a competent court, [organized] conformably to the requirements of the statute." *Id.*, at 651. See also *Moran* v. *Dillingham*, 174 U. S. 153, 158 (1899) ("[T]his court, without considering whether that decree was or was not erroneous in other respects, orders the Decree of the Circuit Court of Appeals to be set aside and quashed, and the case remanded to that court to be there heard and determined according to law by a bench of competent judges" (emphasis deleted)).

We are confronted in petitioners' cases with a question of judicial authority more fundamental than whether "some effort has been made to conform with the formal conditions on which [a judge's] particular powers depend." *Johnson* v. *Manhattan R. Co.*, 61 F. 2d 934, 938 (CA2 1932) (L. Hand, J.). The difference between the irregular judicial designations in *McDowell* and *Ball* and the impermissible panel designation in the instant cases is therefore the difference between an action which could have been taken, if properly pursued, and one which could never have been taken at all. Like the statutes in *William Cramp & Sons, Moran,* and *American Constr. Co.,* § 292(a) embodies weighty congressional policy concerning the proper organization of the federal courts.[11]

---

[11] The Government seeks to distinguish *William Cramp & Sons, Moran,* and *American Constr. Co.* on the ground that the statutory provision at issue in each of those cases, unlike § 292(a), "expressly prohibited" the challenged judge's participation. Brief for United States 18. In light of our conclusion that there is no plausible interpretation of § 292(a) permitting the designation in the instant cases, see *supra,* at 74–76, we think this is a distinction without a difference. In any event, there was no "express" prohibition at play in *United States* v. *American-Foreign S. S. Corp.*, 363 U. S. 685, 690–691 (1960), in which this Court vacated the judgment of a

Section 292(a) does not permit any assignment to service on the courts of appeals of a district judge who does not enjoy the protections set forth in Article III. Congress' decision to preserve the Article III character of the courts of appeals is more than a trivial concern, cf. *Northern Pipeline Constr. Co.* v. *Marathon Pipe Line Co.,* 458 U. S. 50, 57–60 (1982) (plurality opinion), and is entitled to respect. The Chief Judge of the Northern Mariana Islands did not purport to have "all the powers attached to" the position of an Article III judge, *McDowell,* 159 U. S., at 601, nor was the Chief Judge of the Ninth Circuit otherwise permitted by § 292(a) to designate him for service on an Article III court. Accordingly, his participation contravened the statutory requirements set by Congress for the composition of the federal courts of appeals.

For essentially the same reasons, we think it inappropriate to accept the Government's invitation to assess the merits of petitioners' convictions or whether the fairness, integrity, or public reputation of the proceedings were impaired by the composition of the panel. It is true, as the Government observes, that a failure to object to trial error ordinarily limits an appellate court to review for plain error. See 28 U. S. C. § 2111; Fed. Rule Crim. Proc. 52(b). But to ignore the violation of the designation statute in these cases would incorrectly suggest that some action (or inaction) on petitioners' part could create authority Congress has quite carefully withheld. Even if the parties had *expressly* stipulated to the participation of a non-Article III judge in the consider-

---

Court of Appeals, sitting en banc, because a Senior Circuit Judge who had participated in the decision was not authorized by statute to do so. See also *id.,* at 691 (Harlan, J., dissenting) ("The statute need hardly be read, as the Court now holds it should be, as saying that a case in an *en banc* court shall be 'heard and determined' by the active circuit judges").

ation of their appeals, no matter how distinguished and well qualified the judge might be, such a stipulation would not have cured the plain defect in the composition of the panel.[12] See *William Cramp & Sons*, 228 U. S., at 650.

More fundamentally, our enforcement of § 292(a)'s outer bounds is not driven so much by concern for the validity of petitioners' convictions at trial but for the validity of the composition of the Court of Appeals. As a general rule, federal courts may not use their supervisory powers to circumvent the obligation to assess trial errors for their prejudicial effect. See *Bank of Nova Scotia* v. *United States*, 487 U. S. 250, 254–255 (1988). Because the error in these cases involves a violation of a statutory provision that "embodies a strong policy concerning the proper administration of judicial business," however, our exercise of supervisory power is not inconsistent with that general rule.[13] *Glidden*, 370 U. S., at 536 (plurality opinion). Thus, we invalidated the judgment of a Court of Appeals without assessing prejudice, even though urged to do so, when the error alleged was the improper composition of that court. See *United States* v. *American-Foreign S. S. Corp.*, 363 U. S. 685, 690–691 (1960) (vacating judgment of en banc Court of Appeals because participation by Senior Circuit Judge was not provided by statute).

---

[12] We agree with the Government's submission that the improper composition of the court below was "an isolated, one-time mistake." Brief for United States 5. Countervailing concerns for gamesmanship, which animate the requirement for contemporaneous objection, therefore dissipate in these cases in light of the rarity of the improper panel assignment at issue.

[13] "The authority which Congress has granted this Court to review judgments of the courts of appeals undoubtedly vests us not only with the authority to correct errors of substantive law, but to prescribe the method by which those courts go about deciding the cases before them." *Lehman Brothers* v. *Schein*, 416 U. S. 386, 393 (1974) (REHNQUIST, J., concurring).

It is also true that two judges of a three-judge panel constitute a quorum legally able to transact business.[14] Moreover, settled law permits a quorum to proceed to judgment when one member of the panel dies or is disqualified. *United States* v. *Allied Stevedoring Corp.*, 241 F. 2d 925, 927 (CA2 1957) (L. Hand, J.). For two reasons, however, the presence of a quorum on the Ninth Circuit panel does not save the judgments below. First, the quorum statute has been on the books (in relevant part essentially unchanged) for over a century,[15] yet this Court has never doubted its power to vacate the judgment entered by an improperly constituted court of appeals, even when there was a quorum of judges competent to consider the appeal. See *United States* v. *American-Foreign S. S. Corp.*, 363 U. S. 685 (1960); *William Cramp & Sons Ship & Engine Building Co.* v. *International Curtiss Marine Turbine Co.*, 228 U. S. 645 (1913); *American Constr. Co.* v. *Jacksonville, T. & K. W. R. Co.*, 148 U. S. 372 (1893).

Second, the statutory authority for courts of appeals to sit in panels, 28 U. S. C. § 46(b), requires the inclusion of at least three judges in the first instance.[16] As the Second Circuit

---

[14] Title 28 U. S. C. § 46(d) provides: "A majority of the number of judges authorized to constitute a court or panel thereof . . . shall constitute a quorum." As used in § 46(d), "*quorum* . . . means such a number of the members of the court as may legally transact judicial business." *Tobin* v. *Ramey*, 206 F. 2d 505, 507 (CA5 1953).

[15] See Act of Mar. 3, 1911, ch. 6, § 117, 36 Stat. 1131:

"There shall be in each circuit a circuit court of appeals, which shall consist of three judges, of whom two shall constitute a quorum . . . ."

The Evarts Act, which established the original circuit courts of appeals, contained essentially the same provision:

"[T]here is hereby created in each circuit a circuit court of appeals, which shall consist of three judges, of whom two shall constitute a quorum." Ch. 517, § 2, 26 Stat. 826.

[16] Title 28 U. S. C. § 46(b) provides, in pertinent part: "In each circuit the court may authorize the hearing and determination of cases and controversies by separate panels, each consisting of three judges, at least a majority

has noted, Congress apparently enacted § 46(b) in part "to curtail the prior practice under which some circuits were routinely assigning some cases to two-judge panels." *Murray* v. *National Broadcasting Co.*, 35 F. 3d 45, 47 (1994). It is "clear that the statute was not intended to preclude disposition by a panel of two judges in the event that one member of a three-judge panel to which the appeal is assigned becomes unable to participate," *ibid.*, but it is less clear whether the quorum statute offers postjudgment absolution for the participation of a judge who was not otherwise competent to be part of the panel under § 292(a). Thus, although the two Article III judges who took part in the decision of petitioners' appeals would have constituted a quorum if the original panel had been properly created, it is at least highly doubtful whether they had any authority to serve by themselves as a panel. In light of that doubt, it is appropriate to return these cases to the Ninth Circuit for fresh consideration of petitioners' appeals by a properly constituted panel organized "comformably to the requirements of the statute."[17] *William Cramp & Sons*, 228 U. S., at 651.

Accordingly, we vacate the judgments of the Court of Appeals and remand these cases for further proceedings consistent with this opinion.

*It is so ordered.*

CHIEF JUSTICE REHNQUIST, with whom JUSTICE SCALIA, JUSTICE GINSBURG, and JUSTICE BREYER join, dissenting.

Under Federal Rule of Criminal Procedure 52(b), courts have "a *limited* power to correct errors that were forfeited

---

of whom shall be judges of that court, unless such judges cannot sit because recused or disqualified . . . ."

[17] Unlike the dissent, we believe that it *would* "flou[t] the stated will of Congress," *post*, at 84 (opinion of REHNQUIST, C. J.), and call into serious question the integrity as well as the public reputation of judicial proceedings to permit the decision below to stand, for *no one* other than a properly constituted panel of Article III judges was empowered to exercise appellate jurisdiction in these cases.

because [they were] not timely raised" below. *United States* v. *Olano,* 507 U. S. 725, 731 (1993) (emphasis added). Even when an error has occurred that is "'plain'" and "'affect[s] substantial rights,'" *id.,* at 732, "'an appellate court may . . . exercise its discretion to notice a forfeited error . . . *only if* . . . the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings,'" *United States* v. *Cotton,* 535 U. S. 625, 631–632 (2002) (quoting *Johnson* v. *United States,* 520 U. S. 461, 467 (1997)) (emphasis added). By ignoring this well-established limitation of our remedial authority, the Court flouts the stated will of Congress and almost 70 years of our own precedent.

It was undoubtedly a mistake, for the reasons stated by the Court, *ante,* at 74–76, for the appellate panel to include an Article IV judge. Exercise of our certiorari jurisdiction was warranted to review the case and to state the law correctly. To that extent, I agree with the Court's opinion. But I do not agree that that error is a valid basis for vacating petitioners' convictions, because even assuming that the error affected petitioners' substantial rights, it simply did not seriously affect the fairness, integrity, or public reputation of judicial proceedings.

Petitioners knew of the composition of the panel of the Court of Appeals more than a week before the case was orally argued. App. 7, 9–12. They made no objection then or later in that court, preferring to wait until the panel had decided against them on the merits to raise it. The Court first concedes, as it must, that a failure to object to error limits an appellate court to review for plain error. *Ante,* at 80. But the Court then completely ignores the fact that "the authority created by Rule 52(b) is circumscribed." *Olano, supra,* at 732. Indeed, the opinion fails to cite, much less apply, *Olano* or our other recent cases reaffirming that "we exercise our power under Rule 52(b) sparingly," *Jones* v. *United States,* 527 U. S. 373, 389 (1999), and only "'in those circumstances in which a miscarriage of justice would other-

wise result,'" *Olano, supra,* at 736 (quoting *United States* v. *Young,* 470 U. S. 1, 15 (1985)).

This failure is baffling in light of our well-established precedent and the clarity of Congress' intent to limit federal courts' authority to correct plain error. As we explained in *Olano,* we articulated the standard that should guide the exercise of remedial discretion under Rule 52(b) almost 70 years ago in *United States* v. *Atkinson,* 297 U. S. 157 (1936). 507 U. S., at 736. Congress then codified that standard in Rule 52(b). *Ibid.* (quoting *Young, supra,* at 7). Since then, "we repeatedly have quoted the *Atkinson* language in describing plain-error review." *Olano, supra,* at 736 (citing cases). According to this long line of cases, when an error is plain and affects substantial rights, "an appellate court *must* then determine whether the forfeited error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings *before* it may exercise its discretion to correct the error." *Johnson, supra,* at 469–470 (quoting *Olano, supra,* at 736) (internal quotation marks omitted; emphasis added).

This mandatory inquiry confirms that no "miscarriage of justice" would result if petitioners' convictions were affirmed. Petitioners make no claim that Chief Judge Munson was biased or incompetent. His character and abilities as a jurist, peculiarly experienced in adjudicating matters arising within the United States Territories, stand unimpeached. It is therefore difficult to understand how fairness or the public reputation of the judicial process is advanced by allowing criminal defendants, whose convictions are supported by "'overwhelming'" evidence, *Cotton, supra,* at 633, 634, and whose arguments on appeal were meritless, to consume the public resources necessary for a second appellate review.*

---

*Drug enforcement agents seized 443.8 grams of methamphetamine in a package that was mailed to Phan and opened in Nguyen's apartment. 284 F. 3d 1086, 1087–1088 (CA9 2002). In that apartment, agents also

86

The Court proffers several justifications for ignoring our controlling precedents, none of which is persuasive. First, the Court's reliance on *United States* v. *American-Foreign S. S. Corp.*, 363 U. S. 685 (1960), is misplaced. See *ante*, at 79–80, n. 11, 81, 82. In that case, Circuit Judge Medina retired three months after the Court of Appeals for the Second Circuit granted a petition for rehearing en banc, but before the court issued its en banc decision. 363 U. S., at 686–687. He nonetheless participated in consideration of the case and subsequently joined the en banc decision. *Id.*, at 687. This Court vacated the judgment because, under the relevant statute, a "court in banc" could consist only of "active circuit judges." *Id.*, at 685 (quoting 28 U. S. C. § 46(c) (internal quotation marks omitted)).

*American-Foreign* does not speak to the situation here because the petitioner in that case did not forfeit the error. Forfeiture is "'the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.'" *Johnson*, 520 U. S., at 465 (quoting *Olano*, 507 U. S., at 731). The petitioner in *American-Foreign* did not so fail. Rather, it objected at the earliest possible moment: immediately after the Court of Appeals issued an en banc decision that Judge Medina joined. It did not know that Judge Medina would retire or then participate in the en banc decision until after the case was briefed and submitted; it availed itself of the earliest opportunity to object to this error by filing a

_____

discovered drug paraphernalia, "nearly a hundred little plastic zip lock bags," and $6,000 in cash. *Id.*, at 1088, 1091.

All three members of the Ninth Circuit panel agreed that petitioners' challenges—that the District Court abused its discretion in admitting certain evidence, and that the evidence was insufficient to support the convictions—lacked merit. Judge Goodwin, writing for the court, explained that petitioners' evidentiary challenges were "overstate[d]," and that the District Court "clearly performed the necessary" analysis. *Id.*, at 1090. With respect to petitioners' sufficiency of the evidence argument, the judges were also unanimous "[t]here was plenty of evidence," *id.*, at 1091, and "abundant facts," *id.*, at 1090, in support of petitioners' convictions.

motion for further rehearing en banc. Petitioner did not forfeit the error, so Rule 52(b) did not apply.

That is not the case here. Petitioners Nguyen and Phan learned before oral argument that Chief Judge Munson was a member of their Court of Appeals panel. They nonetheless failed to object at oral argument or in a petition for rehearing en banc. This forfeiture requires us to apply the *Olano* test faithfully.

The Court also relies mistakenly on *William Cramp & Sons Ship & Engine Building Co.* v. *International Curtiss Marine Turbine Co.*, 228 U. S. 645 (1913), and *American Constr. Co.* v. *Jacksonville, T. & K. W. R. Co.*, 148 U. S. 372 (1893). *Ante*, at 78–79, and n. 11. In both cases, this Court considered an Act of Congress providing that "'no judge before whom a cause or question may have been tried or heard in a district court . . . shall sit on the trial or hearing of such cause or question in the Circuit Court of Appeals.'" 228 U. S., at 649; 148 U. S., at 387. This Court held that, when a district judge sat in contravention of that "comprehensive and inflexible" prohibition, 228 U. S., at 650, the court of appeals was statutorily unable to act. See also *American Construction, supra*, at 387.

But these cases do not control here because, as the Court fails to note, both cases predate our adoption of the standard for plain-error review in *Atkinson* in 1936, and Congress' codification of that standard in Rule 52(b) in 1944. This, and not some broader principle, explains the Court's failure in those cases to apply our modern plain-error analysis. The Court has no such excuse. The cases can also easily be distinguished from this litigation on the facts: They held only that courts constituted "in violation of the *express prohibitions* of [a] statute" lack the authority to act. *Cramp*, 228 U. S., at 650 (emphasis added). In contrast, the Ninth Circuit panel in this litigation did not run afoul of any "comprehensive and inflexible" statutory "prohibition." *Ibid.* Rather, the error must be deduced by negative implication,

from a series of statutes that describe the proper use of district judges in panels of the Courts of Appeals. See *ante,* at 75–76.

The Court also says that "to ignore the violation of the designation statute in these cases would incorrectly suggest that some action (or inaction) on petitioners' part could create authority Congress has quite carefully withheld." *Ante,* at 80. But proper affirmance of petitioners' convictions on the ground that the error did not affect the fairness, integrity, or public reputation of judicial proceedings would not so suggest. The Government has conceded the error, and the Court's opinion properly makes clear to the Courts of Appeals that Chief Judge Munson's participation constituted plain error. Indeed, the Court unwittingly explains why its own holding is mistaken: By ignoring the limits that Congress has imposed on appellate courts' discretion via Rule 52(b), the Court "create[s]" for itself and exercises "authority [that] Congress has quite carefully withheld." *Ibid.*

On this record, there is no basis for concluding that the error seriously affected the fairness, integrity, or public reputation of judicial proceedings. No miscarriage of justice will result from deciding not to notice the plain error here. Accordingly, I would proceed to address petitioners' constitutional claims. Petitioners argue that the designation of a non-Article III judge to sit on the Ninth Circuit panel violated the Appointments Clause, U. S. Const., Art. II, § 2, cl. 2, and the structural guarantees embodied in Article III. I would decline to address the first question because it was "neither raised nor decided below, and [was] not presented in the petition for certiorari." *Blessing* v. *Freestone,* 520 U. S. 329, 340, n. 3 (1997).

Petitioners' second constitutional claim, like their statutory one, is subject to plain-error review. "No procedural principle is more familiar to this Court than that a constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before

a tribunal having jurisdiction to determine it." *Yakus* v. *United States*, 321 U. S. 414, 444 (1944); *Johnson*, 520 U. S., at 465. See also *Cotton*, 535 U. S., at 631–633 (applying plain-error review to a claimed violation of *Apprendi* v. *New Jersey*, 530 U. S. 466 (2000)); *Plaut* v. *Spendthrift Farm, Inc.*, 514 U. S. 211, 231 (1995) ("[T]he proposition that legal defenses based upon doctrines central to the courts' structural independence can never be waived simply does not accord with our cases"); *Commodity Futures Trading Comm'n* v. *Schor*, 478 U. S. 833, 848–849 (1986) ("[A]s a personal right, Article III's guarantee of an impartial and independent federal adjudication is subject to waiver, just as are other personal constitutional rights that dictate the procedures by which civil and criminal matters must be tried").

Assuming, *arguendo*, that petitioners could satisfy the first three elements of the plain-error inquiry, see *Olano*, 507 U. S., at 732; *supra*, at 84–85, their constitutional claim fails for the same reason as does their statutory claim: Petitioners have not shown that the claimed error seriously affected the fairness, integrity, or public reputation of judicial proceedings. See *supra*, at 85. I would therefore affirm the judgment of the Court of Appeals.