WILSON, Circuit Judge,
dissenting:
I dissent from the majority’s decision to deny the motion of plaintiffs-appellees to disqualify Judge Pryor. Unlike the majority and Judge Barkett, I would not reach the merits of the issue, and instead would decline to exercise our discretion to entertain the motion. For the reasons that follow, I would certify the question to the Supreme Court.
The motion, which challenges Judge Pryor’s authority to serve as a Circuit Judge on this Court, argues that his appointment violated the Recess Appointments Clause. Appellate courts have an obligation to review at any point whether they have jurisdiction, Finn v. Prudential-Bache Sec., Inc., 821 F.2d 581, 584-85 (11th Cir.1987), but as the majority notes, this issue is not jurisdictional. Majority Op. at 1222, n.l. The Supreme Court has held that Appointments Clause objections are “nonjurisdictional” and thus are subject to forfeiture and waiver analysis. Freytag v. Comm’r of Internal Revenue, 501 U.S. 868, 878, 111 S.Ct. 2631, 2639, 115 L.Ed.2d 764 (1991) (citations omitted). In Freytag, the Supreme Court chose to address the Appointments Clause challenge before it, but never suggested that it was compelled to do so. In fact, the majority characterized its exercise of its discretion in that case as “rare.” Id. at 879, 111 S.Ct. at 2639. Four Justices would not have reached the merits of the claim at all. See id. at 892, 111 S.Ct. at 2646 (Scalia, J., concurring in part and concurring in the judgment, joined by Justices O’Connor, Kennedy, and Souter).
Other Supreme Court precedent supports the position that challenges to the composition of a court are non-jurisdietional. Recently, the Supreme Court dealt with a challenge to the composition of a Court of Appeals panel in Nguyen v. United States, 539 U.S. 69, 123 S.Ct. 2130, 156 L.Ed.2d 64 (2003). There, non-Article III judges sat on the panels that affirmed the petitioners’ convictions. The Supreme Court exercised its supervisory power to correct the error, but did not consider the claim to be jurisdictional. Id. at 74, 123 S.Ct. at 2134.
Additionally, this Court thrice previously denied leave to file an amicus curiae brief raising the issue of Judge Pryor’s appointment because the motion to file the brief was untimely. See Adefemi v. Ashcroft, No. 00-15783, United States v. $24,2,184.00, No. 01-16485, United States v. Drury, No. 02-12942 (11th Cir. June 10, 2004) (en banc orders). If the issue were jurisdictional, we would have been required to address it (with or without the benefit of amicus curiae). Instead, we declined to consider it because it was not raised in the proper fashion, applying ordinary rules of appellate procedure. Because the issue of Judge Pryor’s appointment is not a jurisdictional one, we are not obligated to address it.[1]
*1239 There are compelling reasons why the proper course of action is to decline to exercise our discretion to address this issue. “A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them.” Lyng v. Northwest Indian Cemetery Protective Ass’n, 485 U.S. 439, 445, 108 S.Ct. 1319, 1323, 99 L.Ed.2d 534 (1988). The outcome of the underlying appeal — an important case ' concerning strip searches and qualified immunity— does not depend on the resolution of this motion. We would not have discretion to avoid the close constitutional questions surrounding the propriety of Judge Pryor’s appointment if they were determinative of an appeal, but that is not the situation facing us.[2] Unless and until we cannot avoid the question, notions of judicial restraint counsel against striving to decide constitutional issues. See Elk Grove Unified Sch. Dist. v. Newdow, — U.S. -, 124 S.Ct. 2301, 2308-09, 159 L.Ed.2d 98 (2004) (discussing similar principles underlying the concept of prudential standing, including “[t]he command to guard jealously and exercise rarely our power to make constitutional pronouncements”).
Another important concern militates against the majority’s decision to reach the merits of the motion. It is simply inappropriate for the members of a court to sit in judgment of a colleague’s legitimacy. In the only two courts of appeals decisions addressing the recess appointment of Article III judges, circuit judges reviewed the appointment of district judges. See United States v. Woodley, 751 F.2d 1008 (9th Cir.1985) (en banc); United States v. Allocco, 305 F.2d 704 (2d Cir.1962). The mandate to review lower-court judgments is the fundamental characteristic of appellate courts. But it is nearly anathema for circuit court judges to review a colleague’s legitimacy to sit as a member of their court.[3]
My specific concern is twofold. First, we risk damaging the collegiality for which this Court is rightly known. Even our most vociferous dissents are critiques of a judge’s legal reasoning in a particular case, and never (one hopes) devolve into personal rebukes. And while the recess appointment question in the motion before us is, in the strictest sense, a matter of constitutional interpretation that does not depend on the judge involved, it is inescapable that this is not a question we can answer in the abstract. A vote in favor of the legal argument presented in the motion is also a vote against Judge Pryor’s membership on our Court.[4] Moreover, even if such a deci *1240 sion were cast as a ruling that the President overstepped his authority under the Recess Appointments Clause, it might also be construed as a judgment that Judge Pryor should not have accepted the appointment in the first place.
Imagine the risk to our collegiality if we granted the motion, but Judge Pryor did not accept our ruling. He might decide to file in the Supreme Court a petition for a writ of mandamus compelling us to restore him to the Court. I should stress that I have no doubt that Judge Pryor would do anything but abide by any decision of this Court, but even the slightest risk that a judge might sue his colleagues should compel us to make every effort to avoid such confrontations. Because it seems impossible to me to avoid the very personal impact of any decision we make, it is neither wise nor prudent for us to make one.
Second, we risk public confidence in the judiciary as an institution. As of September, 2004, Judge Pryor has authored 8 published opinions and 42 nonpublished opinions. As of September 30, 2004, Judge Pryor has participated as a member of a panel in 299 appeals, 40 of which were decided after oral argument. In fact, Judge Pryor has already sat en banc with the full Court and has participated in en banc decisions. Any decision we make on this motion risks undermining public confidence in the Court. On the one hand, if we grant the motion to disqualify Judge Pryor in this case because he was not validly appointed to the Court, we would necessarily imply that he improperly sat in previous cases. This would instantly call into question every one of those decisions. See Nguyen, 539 U.S. at 82-83, 123 S.Ct. at 2138-39 (an improperly constituted court of appeals panel required reversal of conviction, even though opinion affirming conviction was unanimous, and in some circumstances could have been filed by a two-judge quorum). Although it is not unheard of for us to overturn prior decisions, if we granted the motion the public might reasonably wonder why we allowed so many illegitimate decisions to be entered at all.
Conversely, if we deny the motion, the public might reasonably wonder about our motives. I have detailed above the concerns for collegiality that should be present in this case. An observer might assume that a desire to protect collegial relations, or a personal affinity for Judge Pryor developed over the course of his service to our Court, might have weighed in the decision not to remove him. As discussed, the impact of our decision will be very deeply felt by Judge Pryor. Judges are human, and we cannot risk giving the impression that our desire to avoid confrontation and maintain collegiality affected our decision. Because of the problems inherent in sitting in judgment of one’s colleague, we should avoid imperiling public confidence in the Court.
As a final note, I hasten to add that I do not mean to suggest that no one should answer the difficult constitutional questions arising from recess appointments. I merely submit that in the present case, it should not be this Court. While the common law “rule of necessity” would prevent the Supreme Court from avoiding a decision on the legitimacy of a Justice’s recess appointment, that rule only applies to courts of last resort or where no judge at all would be available. See United States v. Will, 449 U.S. 200, 212-216, 101 S.Ct. 471, 479-81, 66 L.Ed.2d 392 (1980) (discussing the history and application of the rule of necessity). The rule does not apply when recourse may be had in a higher court. Such is the case before us. The Supreme Court can address the merits of the recess appointment issue free of the concerns facing us if we pass judgment on a colleague. Just as we sit in review of the *1241 district courts, so the Supreme Court sits in review of us.
In light of the unique — indeed, unprecedented — circumstances of this motion to rule on the legitimacy of a colleague’s presidential appointment, the most prudent course for us to take is to decline to reach the merits of the motion. Instead, as Judge Barkett suggests, we should certify the question to the Supreme Court pursuant to 28 U.S.C. § 1254(2) (2000). See Dissenting Op. of Judge Barkett at 1228 n.l; see also United States v. Penaranda, 375 F.3d 238, 247 (2d Cir.2004) (certifying questions to the Supreme Court).[5] From the majority’s decision to address the merits of the motion, I respectfully dissent.

. The only circuit courts to have addressed the recess appointments of Article III judges *1239 diverge on this point. The Second Circuit did not consider the issue to be jurisdictional. United States v. Allocco, 305 F.2d 704, 707-08 & n. 8 (2d Cir. 1962) (permitting a "departure” from normal waiver rules). The Ninth Circuit raised the issue sua sponte because it felt the question was a “jurisdictional problem[].” United States v. Woodley, 751 F.2d 1008, 1009 n. 2 (9th Cir. 1985) (en banc). If, as I suggest, we were to certify the matter to the Supreme Court, one of the questions certified could be whether the challenge at issue is jurisdictional.

.I can envision situations in which the propriety of Judge Pryor’s appointment would be the determinative question, but I need not expound upon those situations here.

. The only instance where we sit in judgment of each other's opinions is when the en banc court overturns a prior court decision. But even on these rare occasions, we do not review the prior court’s legitimacy. Ordinarily, of course, panels of the Court are bound by a prior panel's decision. Although the reason for this is stare decisis, it also prevents a great deal of disharmony that might result if panels of the Court were constantly overturning each other's decisions.

. Indeed, one portion of the motion is not abstract at all, but asserts that this particular appointment is unconstitutional. See Majority Op. at 1226-27 (determining that this issue is a non-justiciable political question).

. The Second Circuit in Peñaranda certified to the Supreme Court questions arising from the Supreme Court’s decision in Blakely v. Washington, - U.S. -, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). Crucial to the Second Circuit's decision was that Blakely impacted so many criminal cases, and efficient administration of justice required prompt answers to questions about the scope of Blakely. Similar concerns are present here. As noted, every case involving Judge Pryor is cast into doubt until the questions presented in the motion are finally settled by the Supreme Court. The sooner it rules on the validity of Judge Pryor's appointment, the better. Certification not only allows us to avoid sitting in judgment of a colleague's legitimacy, it also facilitates Supreme Court consideration of the issue as soon as possible, to the benefit of both this Court and litigants before it. The majority contends that its decision today is the “speedier determination." Majority Op. at 1228 n.l4. To the contrary, I believe that the most rapid course we could have taken would have been to certify the matter as soon as the motion was originally filed. The Supreme Court would likely have decided whether to accept certification sooner than it would take to decide a petition for certiorari following our decision.