Justice Thomas,
dissenting.
The Court holds today that neither the Federal Magistrates Act, 28 U. S. C. § 631 et seq., nor the Constitution requires that a criminal defendant on trial for a felony personally give his informed consent before a magistrate judge may *259 preside over jury selection. The Court proceeds from the premise, established in Peretz v. United States, 501 U. S. 923 (1991), that the Federal Magistrates Act authorizes magistrate judges to preside over felony jury selection if the parties consent. I reject that premise and, for the reasons set forth below, would overrule Peretz and hold that the delegation of voir dire in this case was statutory error. I further conclude that the error may be corrected despite petitioner’s failure to raise a timely objection in the District Court. Accordingly, I would reverse the judgment below.
I
A
This is the third time the Court has addressed the circumstances under which a district judge may delegate felony voir dire proceedings to a magistrate judge under the “additional duties” clause of the Federal Magistrates Act, 28 U. S. C. § 636(b)(3). In Gomez v. United States, 490 U. S. 858 (1989), the Court unanimously held that § 636(b)(3) does not authorize delegation of felony voir dire proceedings to a magistrate judge. Although the defendants in Gomez had objected to the delegation, neither the Court’s reasoning nor its conclusion turned on that fact. Rather, the Court’s interpretation of § 636(b)(3) rested primarily on two inferences drawn from the statutory scheme. First, the Court reasoned that Congress’ “carefully defined grant of authority to conduct trials of civil matters and of minor criminal cases should be construed as an implicit withholding of the authority to preside at a felony trial.” Id., at 872. Second, the Court found it “incongruous” to assume that Congress intended felony jury selection to be among magistrate judges’ additional duties but failed to provide an explicit standard of review as it had done for other duties described in the statute. Id., at 874. Neither of these inferences depended on the presence or absence of the parties’ consent, and the Court’s conclusion was accordingly unqualified: *260 “Congress ... did not contemplate inclusion of jury selection in felony trials among a magistrate’s additional duties.” Id., at 872; see also ibid., n. 25 (“[W]e decide that the Federal Magistrates Act does not allow the delegation of jury selection to magistrates”); id., at 875-876 (“The absence of a specific reference to jury selection in the statute, or indeed, in the legislative history, persuades us that Congress did not intend the additional duties clause to embrace this function” (footnote omitted)).
Two years later, the Court decided Peretz. Peretz’s trial took place before this Court’s decision in Gomez, and his attorney had agreed to the delegation of voir dire, assuring the Magistrate Judge that his client had consented. During the pendency of Peretz’s appeal the Court decided Gomez, and Peretz argued that Gomez required reversal of his conviction. The Court of Appeals disagreed, concluding that he had waived any challenge to the Magistrate Judge’s supervision of voir dire. Before this Court, the Government defended the Court of Appeals’ holding as to waiver but confessed error with respect to the delegation of voir dire, “agreeing] with petitioner . . . that Gomez foreclosed] the argument that the statute may be read to authorize magistrate-conducted voir dire when the defendant consents.” Brief for United States in Peretz v. United States, O. T. 1990, No. 90-615, p. 9.
Despite the Government’s confession of error, the Court, “[i]n an amazing display of interpretive gymnastics,” Peretz, supra, at 940-941 (Marshall, J., dissenting), held in a 5-to-4 decision that § 636(b)(3) does, after all, permit magistrate judges to conduct felony voir dire proceedings, so long as the parties consent. There is no need here to reproduce Peretz’s flawed reasoning or to rehash the debate between the majority and dissenting opinions. Suffice it to say that, in my view, Gomez correctly interpreted § 636(b)(3) not to authorize delegation of felony jury selection regardless of the parties’ consent, and I agree with the dissenters in Peretz that *261 the Court’s contrary conclusion in that ease was based on a patently “revisionist construction of the Act.” 501 U. S., at 947 (opinion of Marshall, J.).
The only question, then, is whether to give stare decisis effect to Peretz’s erroneous conclusion that § 636(b)(3) authorizes magistrate judges to conduct felony jury selection if the parties consent. Although “[i]t is true that we give stronger stare decisis effect to our holdings in statutory cases than in constitutional cases,” that rule “is not absolute, and we should not hesitate to allow our precedent to yield to the true meaning of an Act of Congress when our statutory precedent is ‘unworkable’ or ‘badly reasoned.’” Clark v. Martinez, 543 U. S. 371, 401-402 (2005) (Thomas, J., dissenting). Peretz is both. Two considerations in particular convince me that Peretz should be overruled.
B
First, Peretz leaves the Court with no principled way to decide the statutory question presented in this case. Contrary to the Court’s suggestion, the question presented here is not whether “every instance of waiver requires the personal consent of the client,” ante, at 250; rather, it is the far narrower question whether § 636(b)(3) requires the defendant’s personal consent before felony jury selection may be delegated to a magistrate judge. The Court answers this question in the negative, but does not point to anything in § 636(b)(3) or in the broader statutory scheme that supports its conclusion. It does not because it cannot. Not having provided for delegation of felony voir dire proceedings under the additional duties clause, Congress of course did not specify whether the parties’ consent is required. And “[bjecause the additional duties clause contains no language predicating delegation of an additional duty upon litigant consent, it likewise contains nothing indicating what constitutes ‘consent’ to the delegation of an additional duty.” Peretz, supra, at 947, n. 6 (Marshall, J., dissenting).
*262 Congress’ silence is particularly telling in the context of the Federal Magistrates Act. Elsewhere in the Act, Congress took great care to specify whether and in what manner the litigants must consent before a magistrate judge may assume significant duties. In § 636(c)(1), for example, Congress provided that full-time magistrate judges may conduct civil trials “[u]pon the consent of the parties,” and that part-time magistrate judges may do so “[u]pon the consent of the parties, pursuant to their specific written request.” Congress further provided in § 636(c)(2) that “[t]he decision of the parties shall be communicated to the clerk of court,” and, if the parties do not consent, the district judge may not raise the matter again without “advis[ing] the parties that they are free to withhold consent without adverse substantive consequences.” I have previously explained at length why § 636(c) is best read to require the express consent of the parties, see Roell v. Withrow, 538 U. S. 580, 591-597 (2003) (dissenting opinion), and I will not repeat that discussion here, other than to point out that Congress obviously focused on the issue and gave detailed instructions regarding the form of the parties’ consent.
Even more telling is that Congress required the defendant’s express, informed consent before a magistrate judge may conduct a misdemeanor trial. Section 636(a)(3) authorizes magistrate judges to conduct certain misdemeanor trials “in conformity with and subject to the limitations of” 18 U. S. C. § 3401, which spells out in detail the manner in which the defendant must consent:
“The magistrate judge shall carefully explain to the defendant that he has a right to trial, judgment, and sentencing by a district judge and that he may have a right to trial by jury before a district judge or magistrate judge. The magistrate judge may not proceed to try the case unless the defendant, after such explanation, expressly consents to be tried before the magistrate judge and expressly and specifically waives trial, judg *263 ment, and sentencing by a district judge. Any such consent and waiver shall be made in writing or orally on the record.” § 3401(b).
The Court recites the language of § 3401(b), but gives it no weight in its analysis. It recognizes that “[tjhere are instances in federal criminal proceedings where the procedural requisites for consent are specified and a right cannot be waived except with a defendant's own informed consent.” Ante, at 247. But it is given no pause by the fact that the Federal Magistrates Act, the very statute it interprets to permit delegation of felony proceedings without the defendant’s “own informed consent,” expressly requires such consent before a magistrate judge may conduct a misdemeanor trial. Instead, the Court worries that “requiring personal, on-the-record approval from the client could necessitate a lengthy explanation the client might not understand at the moment and that might distract from more pressing matters,” ante, at 250, heedless of the fact that Congress plainly viewed any such “burden[sj [on] the trial process,” ante, at 253, as outweighed by the need to obtain the defendant’s personal consent before a magistrate judge may preside, even over a misdemeanor trial.
The Court glides over this glaring anomaly, asserting that “[t]he controlling statute in this case has a different design,” and “does not state that consent to preside over felony voir dire must be granted by following a procedure of similar clarity.” Ante, at 247. But there is only one statute at issue here — the Federal Magistrates Act expressly incorporates 18 U. S. C. § 3401(b) — and the fact that it does not mandate “a procedure of similar clarity” for delegation of felony jury selection is hardly surprising, since § 636(b)(3) — which provides in its entirety that “[a] magistrate judge may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States” — says not a word about delegation of felony jury selection, much less about whether and in what form the parties must consent.
*264 The Court further suggests that § 3401(b) is inconsequential because “there are relevant differences between presiding over a full trial and presiding over voir dire." Ante, at 252. But even Peretz recognized that “supervision of entire civil and misdemeanor trials” is “comparable in responsibility and importance to presiding over voir dire at a felony trial.” 501 U. S., at 933. And of course, it was Congress’ omission of any mode of consent for delegation of felony proceedings, in contradistinction to its detailed treatment of the consent required for delegation of civil and misdemeanor trials, that drove Gomez’s analysis. 490 U. S., at 872 (“[T]he carefully defined grant of authority to conduct trials of civil matters and of minor criminal cases should be construed as an implicit withholding of the authority to preside at a felony trial”); see also Peretz, supra, at 955 (Scalia, J., dissenting) (“By specifically authorizing magistrates to perform duties in civil and misdemeanor trials, and specifying the manner in which parties were to express their consent in those situations, the statute suggested absence of authority to preside over felony trials through some (unspecified) mode of consent”). Today’s decision is truly an ironic reversal. The Court once thought that Congress’ differential treatment of felony jury selection and misdemeanor trials was a reason to believe that Congress had entirely withheld authority to preside over felony jury selection. Today, however, the Court says that the “relevant differences” between these responsibilities support the conclusion that Congress permitted delegation of felony jury selection upon a lesser showing of consent than that required for delegation of a misdemeanor trial.
In the end, I am sympathetic to petitioner’s argument that § 636(b)(3) should be read in pari materia with § 3401(b). See Brief for Petitioner 38 (“If, in enacting the [Federal Magistrates Act,] Congress believed a defendant’s explicit, personal consent was constitutionally necessary to bestow authority upon a magistrate judge in federal misdemeanor *265 cases, then a fortiori Congress would have believed that such explicit, personal consent is necessary to permit a magistrate judge to conduct felony jury selection”). And I share his view that Congress undoubtedly would have adopted something akin to § 3401(b)’s requirements had it authorized delegation of felony jury selection. See Peretz, supra, at 947, n. 6 (Marshall, J., dissenting) (“I would think, however, that the standard governing a party’s consent to delegation of a portion of a felony trial under the additional duties clause should be at least as strict as that governing delegation of a misdemeanor trial to a magistrate”).
Nonetheless, I do not believe that Peretz’s erroneous interpretation of § 636(b)(3) gives me license to rewrite the Federal Magistrates Act to reflect what I think Congress would have done had it contemplated delegation of felony jury selection or foreseen the Court’s decision in Peretz. Cf. Brief for Petitioner 33 (“What the Court is left to do in petitioner’s ease is to fill the gap by determining what Congress would have done in enacting the [Federal Magistrates Act] had it expressly addressed the 'crucial’ consent issue” (footnote omitted)). Where, as here, a mistaken interpretation of a statute leaves the Court with no principled way to answer subsequent questions that arise under the statute, it seems to me that the better course is simply to acknowledge and correct the error. Cf. Kimbrough v. United States, 552 U. S. 85,116 (2007) (Thomas, J., dissenting).
C
A second reason why I would not give stare decisis effect to Peretz is that it requires us to wade into a constitutional morass. In Gomez, the Court declined to decide whether the Constitution permits delegation of felony jury selection to a magistrate judge. 490 U. S., at 872, n. 25. Peretz simply brushed aside that difficult constitutional question. See 501 U. S., at 936 (“There is no constitutional infirmity in the delegation of felony trial jury selection to a magistrate when *266 the litigants consent”); cf. id., at 948-952 (Marshall, J., dissenting) (discussing the “serious constitutional question” “whether jury selection by a magistrate — even when a defendant consents — is consistent with Article III”); id., at 956 (Scalia, J., dissenting) (not resolving “the serious and difficult constitutional questions raised by the [majority’s] construction,” but suggesting that the Court’s reasoning rendered “the doctrine of unconstitutional delegation” “a dead letter”).
Today the Court’s result requires it to go even further. In addition to reaffirming Peretz’s questionable holding that the Constitution permits delegation of felony voir dire proceedings to a non-Article III judge, the Court decides that a criminal defendant’s waiver of his right to an Article III judge need not be personal and informed. The Court treats this as an easy question, concluding that the choice between an Article III judge and a magistrate judge is not among those “basic trial choices,” ante, at 250, that require a defendant’s personal consent because “a magistrate judge is capable of competent and impartial performance of the judicial tasks involved in jury examination and selection,” and because magistrate judges are supervised by Article III judges, ante, at 251-252. Under our precedents, however, the question is not so easily dispatched.
Our cases shed little light on whether and when a criminal defendant must personally waive a constitutional right. Although we have previously stated that, “[f]or certain fundamental rights, the defendant must personally make an informed waiver,” New York v. Hill, 528 U. S. 110, 114 (2000), many of the cases we have cited for that proposition do not in fact stand for it. For example, we have cited Brookhart v. Janis, 384 U. S. 1 (1966), for the proposition that the defendant’s personal consent is required for a waiver of his right to plead not guilty. See, e. g., Hill, supra, at 114. But Brookhart’s holding was narrower. The only question presented there was “whether counsel has power to enter a plea *267 which is inconsistent with his client’s expressed desire and thereby waive his client’s constitutional right to plead not guilty and have a trial in which he can confront and cross-examine the witnesses against him.” 384 U. S., at 7 (emphasis added). Brookhart thus did not decide whether the Constitution prohibits counsel from entering a guilty plea on his client’s behalf in cases where the defendant has not expressed a contrary desire.
Similarly, Patton v. United States, 281 U. S. 276 (1930), a case often cited for the proposition that the right to a jury trial can be waived only by the defendant personally, does not draw a clear distinction between the defendant’s own consent and that of his attorney. The Court stated in dicta that “the express and intelligent consent of the defendant” is required “before any waiver [of the right to a jury trial] can become effective.” Id., at 312. But that requirement appears to have been satisfied in Patton by counsel’s representation to the trial court that he had conferred with his clients and obtained their consent. Id., at 286-287.
Our cases thus provide little relevant guidance. Justice Scalia may well be correct that, as a matter of first principles, there is no right (other than perhaps the sui generis right to counsel) that cannot be waived by a defendant’s attorney, acting as the duly authorized agent of his client. See ante, at 257 (opinion concurring in judgment). But if I were to accept the Court’s oft-repeated dictum that there are certain fundamental rights that can be waived only by the defendant personally, see, e. g., Florida v. Nixon, 543 U. S. 175,187 (2004) (“[C]ertain decisions regarding the exercise or waiver of basic trial rights are of such moment that they cannot be made for the defendant by a surrogate”); Hill, supra, at 114; Taylor v. Illinois, 484 U. S. 400,417-418 (1988) (“[T]here are basic rights that the attorney cannot waive without the fully informed and publicly acknowledged consent of the client”), I see no reason why the right to an Article III judge should not be among them.
*268 There is no apparent reason, for example, why the right to an Article III judge should be deemed any less fundamental, or its exercise any more “ ‘tactical/ ” ante, at 249 (opinion of the Court) (quoting Taylor, supra, at 418), than the right to a jury trial. The Framers viewed independent judges, no less than the right to a jury of one’s peers, as indispensable to a fair trial. See, e. g., United States v. Hatter, 532 U. S. 557, 568-569 (2001) (discussing the Framers’ overriding concern for an independent Judiciary and quoting Chief Justice Marshall’s statement that the “‘greatest scourge . . . ever inflicted’ ” “ ‘was an ignorant, a corrupt, or a dependent Judiciary’” (quoting Proceedings and Debates of the Virginia State Convention, of 1829-1830, p. 619 (1830))). For that reason, the Constitution affords Article III judges the structural protections of life tenure and salary protection. Art. Ill, §1. The Court’s observation that “a magistrate judge is capable of competent and impartial performance” of judicial duties, ante, at 251, is thus beside the point.* Mag *269 istrate judges do not enjoy the structural protections of Article III: They serve 8-year terms and may be removed for cause, 28 U. S. C. §§ 631(e), (i), and they are subject to diminution of their salaries and outright abolition of their offices by Congress. Accordingly, whatever their virtues, magistrate judges are no substitute for Article III judges in the eyes of the Constitution.
In short, if I accepted the Court’s dictum that the right to a jury trial may be waived only by the defendant personally, see, e. g., Nixon, supra, at 187, I would be hard pressed to conclude that waiver of the right to an Article III judge during a critical stage of a felony trial requires anything less. That said, I include this brief discussion of the constitutional issues this case presents not because I would decide them, but to point out that the Court gives them short shrift. These are serious constitutional questions, see Roell, 538 U. S., at 595 (Thomas, J., dissenting), and they are posed only because of Peretz’s erroneous interpretation of the Federal Magistrates Act. Indeed, I suspect that Congress withheld from magistrate judges the authority to preside during felony trials precisely in order to avoid the constitutional questions Peretz now thrusts upon us. Again, rather than plow headlong into this constitutional thicket, the better choice is simply to overrule Peretz. Cf. Peretz, 501 U. S., at 952 (Marshall, J., dissenting) (finding the Court’s resolution of difficult Article III questions “particularly unfortunate” where “the most coherent reading of the Federal Magistrates Act avoids these problems entirely”).
II
Because I conclude that Peretz should be overruled, and that the District Court therefore erred in delegating voir *270 dire to the Magistrate Judge, I must also address the Government’s alternative argument that petitioner forfeited his claim by failing to object to the delegation. Petitioner’s failure to object, the Government contends, means that he cannot prevail unless he satisfies the requirements of the plain-error rule. It is true that petitioner did not raise a timely objection to the District Court’s delegation of voir dire. And petitioner cannot satisfy the plain-error rule because the statutory error below — unauthorized delegation of voir dire to a magistrate judge — was not “plain” under Peretz.
Not all uncontested errors, however, are subject to the plain-error rule. In limited circumstances, we have “agreed to correct, at least on direct review, violations of a statutory provision that embodies a strong policy concerning the proper administration of judicial business even though the defect was not raised in a timely manner.” Nguyen v. United States, 539 U. S. 69, 78 (2003) (internal quotation marks omitted). In Nguyen, a non-Article III judge sat by designation on the Ninth Circuit panel that affirmed petitioners’ convictions. Petitioners failed to object to the composition of the panel in the Ninth Circuit and raised the issue for the first time in their petitions for certiorari. Because the Ninth Circuit panel “contravened the statutory requirements set by Congress for the composition of the federal courts of appeals,” id., at 80, and because those requirements “embodied] weighty congressional policy concerning the proper organization of the federal courts,” id., at 79, we held that petitioners’ failure to object did not preclude relief. We specifically declined to apply the plain-error rule:
“It is true, as the Government observes, that a failure to object to trial error ordinarily limits an appellate court to review for plain error. See 28 U. S. C. §2111; Fed. Rule Crim. Proc. 52(b). But to ignore the violation of the designation statute in these cases would incorrectly suggest that some action (or inaction) on petitioners’ part could create authority Congress has quite *271 carefully withheld. Even if the parties had expressly stipulated to the participation of a non-Article III judge in the consideration of their appeals, no matter how distinguished and well qualified the judge might be, such a stipulation would not have cured the plain defect in the composition of the panel.” Id., at 80-81.
I see no reason to treat this case differently than Nguyen. Just as “Congress’ decision to preserve the Article III character of the courts of appeals [was] more than a trivial concern” in that case, id., at 80, so too here Congress’ decision to preserve the Article III character of felony trials “embodies weighty congressional policy concerning the proper organization of the federal courts,” id., at 79. Accordingly, as in Nguyen, the Court can and should correct the error in this case despite petitioner’s failure to raise a timely objection below.-
Ill
For the reasons stated, I would reverse the judgment of the Court of Appeals and remand for a new trial.

Equally beside the point is the fact that magistrate judges are appointed by, and subject to the supervision of, district judges. The Court reassures itself by hypothesizing that the District Court could have ruled on any objections to the Magistrate Judge’s rulings. Ante, at 251-252. But the Court once “harbor[ed] serious doubts” that a district judge who was not present during jury selection could “meaningfully” review a magistrate judge’s rulings, Gomez v. United States, 490 U. S. 858, 874 (1989), because “no transcript can recapture the atmosphere of the voir dire,” id., at 875. The Court does not explain what has intervened to dispel those doubts. And even if district judges could meaningfully review magistrate judges’ voir dire rulings, that would not change the fact that magistrate judges are subject to outside influences in ways that Article III judges are not. As Judge Posner has explained:
“The fact that the appointing power has been given to Article III judges is the opposite of reassuring. It makes magistrates beholden to judges as well as to Congress. . . . The Constitution built internal checks and balances into the legislative branch by making Congress bicameral and into the judicial branch by guaranteeing all federal judges — not just Supreme Court Justices, or appellate judges generally — tenure during good behavior and protection against pay cuts. Appellate judges can reverse district judges, can mandamus them, can criticize them, can remand a case to another judge, but cannot fire district judges, cow them, or silence *269 them — cannot prevent them from making independent judgments and expressing independent views. . . . [A]s long as [district judges] enjoy the tenure and compensation protections of Article III, they are independent of [those] who appointed them____ Magistrates do not have those protections; the judges control their reappointment.” Geras v. Lafayette Display Fixtures, Inc., 742 F. 2d 1037, 1053 (CA7 1984) (dissenting opinion).